674 A.2d 702

**In the Interest of M.B.**

**Appeal of P.B. and G.B.**

**Adams County Children and Youth Services.**

Superior Court of Pennsylvania.

Argued Oct. 24, 1995.

Filed March 22, 1996.

508

Debra P. Fourlas, Gettysburg, Tony Sangiamo, York, for appellant.

David K. James, Gettysburg, for appellee.

Chester G. Schultz, Gettysburg, for Adams County Children and Youth Services, participating party.

Before CAVANAUGH, BECK and HESTER, JJ.

BECK, Judge:

We decide, *inter alia*, the standard to be used in determining visitation after the trial court has changed the goal of the family service plan from long term foster care to adoption.

This is an appeal by the parents of M.B. from an order of the Court of Common Pleas which continues placement of M.B. in foster care, changes the goal of the family service plan to adoption, excuses Adams County Children and Youth Services (CYS) from reunification efforts and reduces the parents' visitation to four times a year. Appellants protest the court's decision to change the family service plan goal to adoption and reduce visitation. We affirm the trial court's order.

M.B. was born on May 1, 1982, to P.B. and G.B. and is the youngest of three children. P.B., the mother, was diagnosed as mildly mentally retarded and G.B., the father, was diagnosed as borderline intellectual functioning. In 1984, the parents had difficulty providing appropriate care for their three children despite help from social services and community agencies. M.B. was removed from their custody in 1984, adjudicated dependent and placed in foster care. Review hearings have been held every six months. At each review hearing, the court entered findings that the conditions which necessitated placement continued to exist and determined that placement was best for the protection and welfare of M.B.

In 1988, CYS filed petitions involuntarily to terminate the appellants' parental rights to M.B. and her two brothers. The Court of Common Pleas entered the order. On appeal, the Superior Court reversed finding that the trial court failed to consider the role of the parental bond in the children's life. *In re P.A.B., M.E.B., M.A.B.,* 391 Pa.Super. 79, 570 A.2d 522 (1990). This court concluded that termination would not serve the children's needs and welfare, and continued the status quo of foster care for the children. *Id.* at 528.

Since the Superior Court's decision five years ago, M.B. has remained in the custody of CYS. Several changes have occurred which prompted CYS to request a change in M.B.'s permanency goal to adoption. Her parents are now separated

with no current plans to reconcile and they each have separate visits with M.B. on a monthly basis. M.B. is now thirteen and has been in the same foster home for eight years. The foster parents would like to adopt M.B. and the child wishes to become a permanent member of the foster family. Finally, all parties acknowledge that any future reunification between M.B. and her natural parents is not a practical consideration.

After hearing from expert witnesses for CYS and for the parents, the trial court ordered M.B.'s family service plan goal to change to adoption and reduced the natural parents' visitation. Appellants' motion for reconsideration was denied. The parents' appeal is properly before us. *See In re In the Interest of M.B., K.B., J.B., L.B.,* 388 Pa.Super. 381, 565 A.2d 804 (1989), *allocatur denied,* 527 Pa. 602, 589 A.2d 692 (1990) (order changing the goal of CYS regarding dependent children to adoption is final and appealable).

■ Our standard of review in a petition to change the goal of the family service plan is the same as in a dependency appeal. We must accept the facts found by the trial court unless the facts are not supported by the record. *In the Matter of Luis R.,* 430 Pa.Super. 518, 635 A.2d 170 (1993), *allocatur denied,* 538 Pa. 635, 647 A.2d 511 (1994). Although, as a reviewing court we are bound by facts properly found, we are not bound by the trial court's inferences, deductions and conclusions made from those facts. *Id.* Based on properly supported facts, we review to determine if the trial court abused its discretion.

■ We conclude the trial court did not abuse its discretion. The record supports the trial court's assessment that the present long term foster care plan is contrary to M.B.'s best interest; therefore, the change in the permanency goal to adoption was proper. *See In re J.S.W.,* 438 Pa.Super. 46, 651 A.2d 167 (1994); *In Interest of Sweeney,* 393 Pa.Super. 437, 574 A.2d 690 (1990), *allocatur denied,* 526 Pa. 649, 585 A.2d 469 (1991) (best interest of the child standard is proper standard in determining whether placement goal should be changed); *In the Interest of M.B., K.B., J.B., L.B., supra.*

This court in *In Interest of Sweeney, supra,* quoting *In re Quick,* 384 Pa.Super. 412, 559 A.2d 42 (1989) stated:

> Permanency Planning is a concept whereby children are not relegated to the limbo of spending their childhood in foster homes, but instead, dedicated effort is made by the court and the children's agency to rehabilitate and unite the family in a reasonable time, and failing in this, to free the child for adoption.

To allow M.B. to remain in permanent foster care when trial testimony conclusively reveals that reunification will never occur is not in the child's best interest. It simply leaves her without the stability of a permanent family.

Appellants argue that this court's previous holding refusing to terminate parental rights precludes the trial court from changing M.B.'s permanency goal to adoption. *In re P.A.B, M.E.B., M.A.B., supra.* In this court's previous decision, we found that breaking the bond between the natural parents and their children would not be in the best interest of the children. *Id.* Appellants assert that the circumstances have not changed; therefore, the goal cannot be changed. Without holding that a change of circumstance is a predicate to a change in the family service plan goal, we point out that the record establishes substantial changes in circumstances. The following changes have occurred: the bond between M.B. and her parents has weakened; reunification between M.B. and her natural parents is no longer a viable option; visitation or contact with the natural parents has an adverse effect on M.B. and further visitation may have an even greater adverse effect on M.B.[1] M.B. needs the stability of a permanent family; M.B.'s foster parents wish to adopt her and she wishes to become a permanent member of the foster family. In the prior termination proceeding, family reunification had not been ruled out; a bond existed between the children and parents; there was no evidence that visitation had negative

1. The parents' expert testified M.B. received no benefit from the monthly visits and that attempting to maintain the parent-child bond may be detrimental.

consequences on M.B.; and the adoptive option for M.B. was unclear.

■ In their argument on appeal, appellants confuse the standard to be employed in a change of goal proceeding with a termination proceeding. In a change of goal proceeding, the trial court must focus on the child and determine the goal in accordance with the child's best interests. *See In Interest of Sweeney, supra* (holding court properly applied best interest of child standard when determining whether placement goal should be changed). In a termination proceeding, the focus is on the conduct of the parents. Termination is controlled by the statutory requirements of 23 Pa.C.S. § 2511. Changing the goal to adoption does not terminate the natural parents' rights, although it is a step in that direction.[2] We point out that the question of termination is not before us.

For the reasons stated above, we conclude the trial court did not abuse its discretion in determining that the permanency goal be changed to adoption.

■ Appellants have also appealed the reduction of their visitation from a monthly to a quarterly basis. We conclude the trial court did not abuse its discretion. The standard in evaluating frequency of visitation is based on the best interest of the child. *In re Long,* 313 Pa.Super. 47, 459 A.2d 403 (1983); *In re E.F.V.,* 315 Pa.Super. 246, 461 A.2d 1263 (1983). As a usual rule, parental visitation is not denied except where a grave threat to the child can be shown. The policy underlying the "grave threat" standard reflects the desirability of

2. Furthermore, the Court of Common Pleas Juvenile Division has jurisdiction of placement goals while the Orphan's Court has jurisdiction over termination of parental rights. In *Conklin v. Commonwealth Department of Public Welfare,* 105 Pa.Cmwlth. 84, 522 A.2d 1207 (1987), the Commonwealth Court referred to this very situation in a footnote stating "CYS could be acting well within its discretion in maintaining as a goal adoption, notwithstanding temporary lack of success with that goal in Orphans' Court." 522 A.2d at 1210 n. 6. The court went on to state that "an Orphans' Court judge may certainly refuse to grant a termination petition brought pursuant to a placement goal, but the goal itself may be subject to scrutiny in juvenile court." *Id. See In the Interest of M.B., K.B., J.B., L.B., supra* (discussing difference between goal change and termination of parental rights).

continuing contact between the parent and the child. It underscores the importance of each parent's maintaining a meaningful and sustaining relationship with the child. The "grave threat" to the child standard is applied to visitation both where the child is in the custody of a natural parent and where the child is in foster care and in the custody of the state.[3] *See also In Interest of Rhine*, 310 Pa.Super. 275, 456 A.2d 608 (1983); *In re Mary Kathryn T.*, 427 Pa.Super. 515, 629 A.2d 988 (1993), *allocatur denied*, 536 Pa. 646, 639 A.2d 32 (1994); *In re Damon B.*, 314 Pa.Super. 391, 460 A.2d 1196 (1983); *In re E.F.V.*, 315 Pa.Super. 246, 461 A.2d 1263 (1983); and *In re Miller*, 380 Pa.Super. 423, 552 A.2d 261 (1988).

When the child is in foster care, the grave threat standard supports the goal of family reunification as provided in the Juvenile Act. *In Interest Rhine, supra.* Allowing visitation except in extreme circumstances encourages continued parental interest and contact in order to prepare the child and family for eventual reunification.

However, when the court finds that reunification is no longer the goal, the grave threat standard is not a proper guide, and must be replaced by a standard that recognizes that the natural family is not likely to be a viable entity. It is difficult to draw a bright line as to the necessity or frequency of visitation because the child's best interests in some cases will require a gradual tapering of visitation and in others a more abrupt termination. There may even be those rare cases where continued, substantial visitation may be appropriate. To determine whether visitation is in the child's best interest the court may consider all evidence relating to the child's best interest including but not limited to the following factors: (1) length of separation from natural parents; (2) effect of visitation on the child; (3) the age, sex and health of the child; (4) the emotional relationship between child and parents; (5) the special needs of the child; and (6) the effect on the child's relationship with the current caregiver, usually

---

**3.** The Juvenile Act does not contain any guidelines or suggestions for granting or reducing visitation once the child has been adjudicated dependent and removed from his/her natural parents.

the foster parents. Most importantly, the focus must be on the best interests of the child, in light of the fact that the natural family is not likely to be reunited.

Applying these factors to this case, we find no abuse of discretion on the part of the trial court.

Order affirmed.

CAVANAUGH, J., files a dissenting opinion.

CAVANAUGH, Judge, dissenting.

I believe that the trial court erred in changing Melissa Baker's permanency plan goal to adoption and in reducing appellant's visitation rights and, therefore, I respectfully dissent.

The record reveals that appellants, Glenn and Patricia Baker, are loving and affectionate parents. Appellants' expert witness, Dr. Ray F. Bowen, Ph.D., as well as ACCYS' expert, Dr. Gregory Powell, Ph.D., testified at the hearing on December 19, 1994 that the parents are bonded and loving to their daughter to the degree that their mental limitations will allow. The new placement goal of adoption, while not final and conclusive in that the trial court may later reconsider its decision and change the goal back to long-term foster care, approves the practical termination of loving parents' right to maintain a relationship with their daughter. In a case where we held a similar order appealable, we stated, "By allowing CYS to change its goal to adoption, the trial court has decided that CYS has provided adequate services to the parent but that he/she is nonetheless incapable of caring for the child and that, therefore, adoption is the favored disposition. In other words, the trial court order is the decision that allows CYS to *give up* on the parent." *In re Interest of M.B.*, 388 Pa.Super. 381, 388, 565 A.2d 804, 808 (1989) (emphasis added).

In rejecting appellants' argument that this court's previous holding in *In re P.A.B., M.E.B., M.A.B.*, 391 Pa.Super. 79, 570 A.2d 522 (1990) precludes the trial court from changing the child's permanency goal to adoption, the majority finds the following circumstances to have changed: the bond between

the child and her parents has weakened; reunification between the child and her natural parents is no longer a viable option; visitation or contact with the natural parents has an adverse effect on the child and further visitation may have an even greater adverse effect on her. I disagree.

First, the record reveals that the status of the bond between appellants and the child remains the same as it was when we considered the termination request in *In re P.A.B., supra.* In *In re P.A.B., supra,* we stated that the trial court's finding that "the parents have consistently displayed a loving and caring attitude toward the children . . . and have exhibited the care and love of parents" was supported by uncontested evidence. *Id.* at 89, 570 A.2d at 527. Because the trial court failed to examine the role of this parental bond in the children's lives, and since the children benefitted from the relationship with appellants, we reversed the order terminating appellants' parental rights. As stated above, the evidence in the instant appeal establishes that the parents continue to display a loving and caring attitude toward the child.

Second, Dr. Gregory Powell, Ph.D. testified that the child's visits with the parents are "detrimental to her identity formation" because each time she sees them, she is reminded that she "is not fully a part of the [foster] family." Dr. Bowen testified that "the parental visits as . . . relationship building should be phased out. However, [the child] is going through a phase of identity where she needs to know . . . her biological heritage." As such, he recommended that the visits be reduced to quarterly. I disagree that this evidence justifies changing the placement goal to adoption and reducing appellants' visitation rights to four times per year. *See In re Damon B.,* 314 Pa.Super. 391, 393, 460 A.2d 1196, 1197 (1983) (visitation rights reduced to four times per year because visits created stress for child, including nightmares, enuresis, irrational fear of natural mother and expressions of rage in his behavior). Unlike the child in *In re Damon, supra,* both experts in this case testified that the child was not experiencing any significant emotional or behavorial difficulties.

The majority states that in determining whether visitation should be reduced, the "focus must be on the best interests of the child, in light of the fact that the natural family is not likely to be reunited." Thus, the majority holds that when reunification is not possible, in this case because of the mental disabilities of the parents, the "grave threats" standard is no longer applicable. Rather, the standard to be utilized is the "best interests" of the child.

It has long been the law in this Commonwealth that "only when the evidence clearly shows that [parents] are unfit to associate with [their] children should [they] be denied the right to see them." *Commonwealth ex rel. Turner v. Strange,* 179 Pa.Super. 83, 86, 115 A.2d 885, 886 (1955). *See also In re Damon B., supra; In Interest of Rhine,* 310 Pa.Super. 275, 283, 456 A.2d 608, 613 (1983) ("Visitation has been limited or denied only where the parent has been shown to suffer from severe mental or moral deficiencies that constitute a grave threat to the child."); *In re Mary Kathryn T.,* 427 Pa.Super. 515, 629 A.2d 988 (1993); *In re Adoption of Michael, J.C.,* 326 Pa.Super. 143, 473 A.2d 1021 (1984).

Reducing appellants' visitation in this case, where there is no evidence of parental unfitness to associate with the child nor of any severe adverse effect upon the child, is contrary to the Juvenile Act's goal of family preservation. *In Interest of Rhine, supra; Interest of Feidler,* 392 Pa.Super. 524, 573 A.2d 587 (1990). In addition, since the child is thirteen years old and will be emancipated in less than five years, appellants should be given the opportunity to visit their daughter "in the expectation of their becoming acquainted and to assist the child when [she] shall have arrived at the age of discretion to make [her] own choice." *Commonwealth ex rel. Turner v. Strange, supra* at 86, 115 A.2d at 886. As such, I would reverse the trial court's order changing the placement goal to adoption and reducing appellants' visitation rights to quarterly.