J-S42045-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: S.B., JR., Minor Child | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.B., SR., Father | No. 495 WDA 2014 |

Appeal from the Order entered February 26, 2014,
in the Court of Common Pleas of Erie County,
Domestic Relations, at No.: 43 of 2013

BEFORE: PANELLA, JENKINS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED AUGUST 27, 2014**

S.B., Sr. ("Father"), appeals from the Order changing the permanency goal for his dependent child, S.B., Jr. ("Child"), to adoption. We affirm.

In its April 7, 2014 Opinion, the juvenile court set forth the relevant factual and procedural history underlying the instant appeal, which we incorporate herein by reference. Juvenile Court Opinion, 4/7/14, at 2-7.

On February 27, 2014, the juvenile court entered a permanency review Order, which changed Child's goal from reunification to adoption. The juvenile court ordered that placement would remain with Child's maternal aunt in kinship care. Further, the Order permitted the Erie County Office of Children and Youth ("OCY") to proceed with adoption plans, and to petition for the termination of Father's parental rights at the appropriate time. Additionally, the Order provided that Child should remain in the legal

custody of OCY, in accordance with the permanency plan, as modified.[1]
Father timely filed a Notice of Appeal of the Order changing Child's
permanency goal, and a Concise Statement of errors complained of on
appeal.

On appeal, Father claims that the juvenile court "abused its discretion
by *sua sponte* ordering an elimination of reunification as a goal, and by
disregarding his efforts at sobriety and his compliance with the reunification
plan developed for him."[2]   Brief for Appellant at 2 (unnumbered).   Father
asserts that the Court Summary prepared by OCY indicated that Father was
in substantial compliance with the court-approved reunification plan.   *Id.*
According to Father,

> [h]e was receiving drug and alcohol treatment ([Court]
> Summary, p.4), was participating in random urinalysis, which
> never generated a positive result of substance abuse ([Court]
> Summary, p.5), had completed a parent skills program (*Id.*),
> was having success in mental health treatment (*Id.*), and had
> participated in visits (*Id.*)….

Brief for Appellant at 2 (unnumbered).   Father concedes, however, that "his
main problem was a relapse on heroin, which he admitted to his probation
officer."   *Id.*   According to Father, he presented evidence that he had a plan

---

[1] The record indicates that, on March 17, 2014, OCY filed a termination
Petition, approximately fifteen months after Child entered into kinship care
with his maternal aunt.

[2] Father did not include, in his appellate brief, a Statement of Questions
Involved, as required by Pa.R.A.P. 2116.

for himself upon release from the halfway house, which included family support, a job and continuing his sobriety. *Id.* at 3 (unnumbered).

Our Supreme Court set forth our standard of review for dependency cases as follows:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the [juvenile] court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

> [A]n abuse of discretion occurs "when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will."

*In re G.P.-R.*, 851 A.2d 967, 973 (Pa. Super. 2004) (citation omitted).

In a change of goal proceeding, the best interests of the child, and not the interests of the parent, must guide the juvenile court, and the parent's rights are secondary. *In re A.K.*, 936 A.2d 528, 532-33 (Pa. Super. 2007). The burden is on the Agency to prove the change in goal would be in the child's best interests. *In the Interest of M.B.*, 674 A.2d 702, 704 (Pa. Super. 1996).

In addressing Father's argument, the juvenile court stated the following:

> It was clear to this [c]ourt that [] Father's testimony lacked credibility. He sought to minimize his situation and place blame on others. His lack of effort to follow the treatment plan in place

- 3 -

was apparent not only from the substance of his words but his demeanor at the time. There is no reason to believe Father will follow through with his stated plan upon his return to Erie.

Juvenile Court Opinion, 4/7/14, at 7.

Although Father contends that OCY was willing to work with him toward reunification with Child, and that OCY had only requested a ninety-day review period, as opposed to a change in goal to adoption, OCY states that Father was aware that the agency was seeking to add adoption, as a concurrent goal, at the hearing. Brief of OCY at 5. OCY explains that the juvenile court did not agree with the concurrent goal of adoption, and ordered a change of goal to adoption. *Id.* OCY asserts that Father has a history of heroin use with multiple relapses, and has untreated mental health issues because he refuses to take his medication. *Id.* at 6. OCY points out that, while there was some testimony suggesting a bond between Child and Father during the supervised visits, the juvenile court rejected that evidence. *Id.* Child, through his guardian *ad litem*, concurs with OCY's brief. Brief for Guardian *Ad Litem* at 3.

Father acknowledges that, in the Court Summary filed on February 24, 2014, OCY stated its intention to change the permanency goal from reunification to add the concurrent goal of adoption. Brief for Appellant at 2 (unnumbered); Court Summary, 2/24/14, at 1. At the hearing on February 24, 2014, OCY presented evidence that it sought to add the concurrent goal of adoption because of Father's long history of ongoing drug use and his

relapse on heroin and cocaine in October and November of 2013, which resulted in Father's incarceration. N.T., 2/24/14, at 4.

Our careful review of the record, including the testimony and other evidence, discloses that the juvenile court's decision was not manifestly unreasonable, a misapplication of the law, or a result of partiality, prejudice, bias or ill will. **See In re G.P.-R.**, 851 A.2d at 973. We agree with the sound reasoning of the juvenile court, as set forth in its Opinion, and affirm on this basis. **See** Juvenile Court Opinion, 4/7/14, at 9-11. We additionally observe the following.

Our review discloses that the juvenile court considered the evidence, and assessed Father's credibility. **See id.** at 7 (wherein the juvenile court does not credit Father's testimony regarding his plans upon release from the halfway house). Further, the parties agree that there is no existing case law that prevented the juvenile court from changing the goal at a second permanency review hearing.

We discern no abuse of discretion or error of law by the juvenile court when it determined that it was not in Child's best interests to have a concurrent goal of return to parent with a goal of adoption, and that a goal of adoption was in Child's best interests. Accordingly, we affirm the order of the juvenile court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/27/2014

**IN THE INTEREST OF:**

S███████ B████████ JR., minor child

) IN THE COURT OF COMMON
) PLEAS OF ERIE COUNTY,
) PENNSYLVANIA
)
) Juvenile Docket: No. 43 of 2013

## 1925 (a) OPINION

In this child dependency case, a permanency hearing was held and an Order entered changing the goal to adoption. S████ B████ Sr., the biological father of the dependent child, challenges that Order contending this Court erred in several respects by eliminating reunification as a goal. Because clear and convincing evidence was presented that the best interests of the child are better served by changing the goal to adoption, it is requested that the Permanency Order be affirmed.

## ISSUES PRESENTED

In his Statement of Matters Complained Of On Appeal, ████████. raises six (6) issues:

First, whether the Court erred by changing the goal to adoption and eliminating reunification as a goal where there had been no notice to the parties that elimination of reunification was being considered.

1

Second, whether the Court erred by eliminating reunification as a goal when both parties agreed to continue working towards reunification for at least 90 days.

Third, whether the Court erred by eliminating reunification as a goal when the record reveals a strong bond between the child and the father.

Fourth, whether the Court erred by eliminating reunification as a goal when the record reveals that visits between the child and the father are positive experiences for the child.

Fifth, whether the Court erred by eliminating reunification as a goal when the record reveals the father successfully completed a program of addiction rehabilitation at a residential treatment facility.

Sixth, whether the Court erred by eliminating reunification as a goal when the record reveals the father voluntarily discharged from a residential treatment facility directly into a halfway house to further treat issues of drug addiction.

## BACKGROUND

The minor child S█████ B███, Jr. (Minor) was born on September 2, 2011 to B██ D████████ (Mother) and B████, Sr. (Father). Mother died from complications of Chronic Obstructive Pulmonary Disease ("COPD") on November 4, 2011 when the minor child was only two (2) months old. Minor remained in the

care of Father until December, 2012 when Father was incarcerated, then transferred to a treatment facility to address his addiction and mental health problems. On his own, Father arranged for the Minor's maternal aunt to care for the child. Minor has been in her care since. (See Court Summary, 2/24/14)

On April 25, 2013 the Minor was adjudicated dependent because of the following facts:

On Sunday, April 14, 2013 the Pennsylvania State Police responded to a phone complaint reporting the Father removed his son from the home of the maternal aunt.

Father was staying at a hotel. When the police eventually found him they were concerned enough about his behavior to call the Erie County Office of Children and Youth (OCY) for assistance. The caseworker arrived and efforts were made by both the police and the caseworker to coax Father into returning the Minor to his aunt. He refused to cooperate and clearly was behaving in a strange way. The Court Summary dated February 24, 2014 reports Father acted "agitated and erratic" in his responses to the police and the caseworker. The Father "was chanting and acting in a bizarre manner." Most disturbing, however, the Minor, while in the custody of his Father, wore no socks, shoes or coat. Ultimately, the police called Crisis Services. They proceeded with an involuntary mental health

commitment. A verbal Detention Order was obtained for the Minor, and he was returned to his aunt.

A Dispositional Hearing took place on May 22, 2013 and a written Order entered one week later. The goal at the time was to reunify Father with his son. To achieve the goal, the Court ordered the Father to refrain from using drugs or alcohol; complete drug and alcohol treatment and submit to random urine testing; complete parenting classes; demonstrate the ability to provide for the health, safety and welfare of the Minor; visit with the child with all visits contingent on the Father's drug and alcohol free state; secure employment; secure stable and safe housing; and pay child support.

The first permanency review hearing then took place on October 2, 2013 with a written Order following the next day. The Court found Father had only moderately complied with the May permanency plan because he used drugs or alcohol on at least two occasions. The Court further found there was minimal progress toward alleviating the circumstances which necessitated the original placement. A review was scheduled in four months. The goal of reunification remained unchanged.

That second review took place on February 24, 2014. The testimony established the following:

4

Father's mental health status remains problematic, largely because he refuses to take medication or recognize the scope of his illness. The Father testified he has been diagnosed with depression (Permanency Hearing Transcript, 2/24/14, p. 32), yet the record establishes he also has been diagnosed with antisocial personality disorder (Permanency Hearing Transcript, 2/24/14, p. 20). He said he tried some prescription medications but had a bad reaction and therefore quit taking them. He further noted a concern with drugs in his system from his drug dependency, and introducing prescribed medications into his system, as an additional reason for quitting (Permanency Hearing Transcript, 2/24/14, pp.35-36). Of particular importance on this subject is the testimony from his probation officer. She noted Father's resistance to taking medication was because Father feels he does not have mental health issues (Permanency Hearing Transcript, 2/24/14, p. 23).

The Father relapsed on drugs both before and after the October 2, 2013 review hearing. The Father reported to his caseworker he relapsed on alcohol and cocaine. Moreover, Father had dilute urine drug screens on June 6, July 24, and July 25, 2013. He was a no show for a urine drug screen on July 22, August 4, and August 8, 2013. Father also admitted to his probation officer he used alcohol, cocaine and heroin on August 7, 2013. Furthermore, Father reported to his probation officer he relapsed on cocaine on October 29 and October 30, 2013

5

(Permanency Transcript, 2/24/13, p. 18). On December 6, 2013, Father admitted to his caseworker he relapsed on November 4, 2013, the second anniversary of the death of Mother. He also admitted relapsing on another occasion, but could not provide the caseworker with a date. (Court Summary, 2/24/13, p.4)

In addition to mental health and drug addiction problems, Father has a criminal history. Though his crimes are minor misdemeanors, and old, his drug use led to several probation violations, the most recent on November 6, 2013, one week after the first permanency hearing. (He remains on probation for Retail Theft). On that day, during an office appointment, Father's probation officer told him a drug test would be administered after Father admitted cocaine and heroin use on October 29 and October 30. He then admitted to using heroin, was immediately arrested for a probation violation and incarcerated until December 9, 2013 when he was discharged to a residential program before going to a halfway house where he currently resides (Permanency Hearing Transcript, pp.18-19).

The record reflects Father has a good relationship with the minor and does well with supervised visits. He does not understand, however, why his visits are supervised, despite evidence of statements he made admitting drug use while Minor was in his care (Permanency Hearing Transcript, 2/24/13, p.6).

Father is currently an inpatient at a halfway house in Altoona. Previously, he was discharged from prison to a residential halfway house on December 9, 2013 and from there went to the halfway in Altoona. He is scheduled for release in April. According to Father, his discharge plan is to return to his son ⟨redacted⟩'s house to live. The Father also testified he had a lease on an apartment ready to be signed, but went to jail the day before he could sign. The Father anticipates signing that lease upon his release from the halfway house. He also anticipates returning to the job he had at the cab company prior to his incarceration.

It was clear to this Court the Father's testimony lacked credibility. He sought to minimize his situation and place blame on others. His lack of effort to follow the treatment plan in place was apparent not only from the substance of his words but his demeanor at the time. There is no reason to believe Father will follow through with his stated plan upon his return to Erie.

## DISCUSSION

In a change of goal proceeding, the lower court must focus on the child and determine the goal in the child's best interests…Changing the goal to adoption does not terminate the natural parents' rights, although it is a step in that direction. In the Interest of A.L.D., 797 A2d. 326 (PaSuper 2002). The Juvenile Act generally requires the child protective agency, in this case OCY, to request a goal

change when the child has been in placement fifteen out of twenty-two months. 42 Pa.C.S. §635(f)(9). There is nothing in the Juvenile Act, case law or rules of procedure that prevent an agency from requesting a goal change sooner, nor is there law in Pennsylvania prohibiting this Court from ordering the agency to change the permanency goal at any time it is clear reunification is not viable and another permanency goal for the child is more appropriate.

With these principles in mind, the Father's first two issues can be addressed in summary fashion. No prior notice to parents of a goal change is required. Nor is a court bound by what goal the agency may wish to pursue. To hold otherwise implies a lower Court judge lacks authority to oversee a permanency hearing and can make no independent judgment concerning what is in the best interests of a dependent child after the proceeding ends. Put another way, to say notice of a potential goal change is required before a court hears evidence, or is bound by the agency choice of goal before a hearing is held, reduces the judicial role to that of a rubber stamp for the agency.

Insofar as they make factual assertions about the relationship between Father and Minor, the third and fourth issues raised are addressed together. Father argues because a strong bond exists between Father and Minor, and because when supervised visits with the Minor take place, the visits go well, reunification should remain as a goal. Contrary to his belief, the record reveals no strong bond exists.

8

The Minor has lived with his maternal aunt the majority of his young life, including periods before Minor was adjudicated. Father's only contact with his son following adjudication took place through visits arranged by the agency. While the visits went well, they were limited in scope and duration. They do not demonstrate the existence of a parental bond, particularly where there is no evidence to suggest, let alone show, additional contact was attempted by Father between the visits, or that Father makes bonding with his child a priority. Being a parent means assuming responsibility so that a real bond develops, not just having a casual relationship with one's children. In re C.T., 944 A2d. 779 (PaSuper 2007). Unsubstantiated declarations a strong bond exists are not evidence of such C.T., supra.

The final two issues raised by Father are also related and can be addressed together. Here he challenges the elimination of reunification as a goal by claiming he successfully completed a program of addiction rehabilitation then "voluntarily discharged from a residential facility directly into a halfway house to further treat issues of drug addiction."

There are several reasons why Father's contentions lack merit.

First, there is no evidence, other than Father's testimony, about his progress in treatment.

9

Second, while he successfully completed the program at the residential treatment facility on January 20, 2014 that fact cannot be viewed in isolation or serve as the sole basis for determining the best interests of his child. Father's efforts at rehabilitation were considered by this Court, but other factors, such as his relapse history, his refusal to take medication for his mental illness, his lack of compliance with the permanency plan, his poor performance caring for the child when he has been unsupervised, the lack of a bond between parent and child, and his general state of denial outweigh whatever success he may have in his drug treatment. All factors considered as a whole serve as the basis for the elimination of reunification as a goal.

Finally, there is a question in this Court's mind about how well Father will function in an unstructured environment or when left to his own devices. The record shows he does well when supervised, or when he is forced to conform but fails otherwise. The caseworkers knowledgeable about his circumstances were in agreement visits between Father and Minor went well so long as they were supervised. His probation officer also indicated Father chose drug treatment rather than face probation revocation proceedings (Permanency Hearing Transcript, 2/24/13, p. 19). This is not the type of evidence showing Father "voluntarily" chose treatment or inspiring confidence Father can be trusted to raise a two-year old child without considerable oversight over an indefinite period.

An agency obviously is not required to oversee Father's progress indefinitely or provide services if he is either unable or unwilling to apply the instruction given. The goal of intervention is to rehabilitate the family and reunite the child with his family, or to terminate parental rights and free the child for adoption, if reasonable efforts over an appropriate period of time have failed. In the Interest of A.L.D., 797 A.2d 326 (PaSuper 2002). Minor was in placement over ten (10) months at the time of the last permanency hearing. Father has shown minimal progress in resolving the problems which led to the placement. A reasonable amount of time has passed to allow him a chance. He has not availed himself of the opportunity to the detriment of his child.

## CONCLUSION

The Father has demonstrated he either will not or cannot address his mental health and drug problems to a degree he can be trusted with raising a two-year old toddler. His history of drug relapses, and recent probation revocations for drug use are further evidence he has done little with the opportunity afforded him to reunify with his child. No strong bond between the two exist, and whatever contact there has been fails to demonstrate the existence of a parental bond, particularly where no additional contact was attempted. Finally his own testimony and statements made to others show a lack of appreciation of the seriousness of his problems and the work required to overcome them. Clear and convincing evidence exists that

11

the best interests of his child would be served by eliminating reunification as a goal and allowing OCY to proceed to adoption. It is therefore respectfully requested this Court affirm the February 26, 2014 Permanency Review Order.

Dated this _____7th_____ day of April, 2014.

BY THE COURT:

_____ J.

**Robert A. Sambroak, Jr.**

cc. Patrick W. Kelley

    Kevin C. Jennings

    Jason Owen