J-S56002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: K.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: K.C., FATHER | No. 1125 EDA 2017 |

Appeal from the Order Entered March 7, 2017
In the Court of Common Pleas of Bucks County
Domestic Relations at No(s): CP-09-DP-19-2014

BEFORE:  BOWES, STABILE, AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:　　　　　　　　　**FILED OCTOBER 20, 2017**

K.C. ("Father") appeals from the order entered on March 7, 2017, wherein the juvenile court adjusted the duration and frequency of his supervised visitations with his three-year-old son, Ka.C.[1]  We quash the appeal.

Bucks County Children and Youth Services ("CYS") became involved with this family during December 2013, after Ka.C. was born with opiates and cocaine in his system.  Father and D.K. ("Mother") were unable to care for the newborn, and Father was incarcerated shortly after the child's birth. Mother was imprisoned after she was caught attempting to smuggle drugs

---

[1] While the caption identifies both father and son as K.C., we refer to the minor as Ka.C. for clarity.

---

*  Retired Senior Judge specially assigned to the Superior Court.

into the Bucks County Correctional Facility. Ka.C. currently resides in kinship foster care with maternal relatives, who are adoptive resources.

On February 19, 2014, the juvenile court adjudicated Ka.C. dependent. As the initial permanency goal was reunification, the court allotted regular supervised visitations with Mother and Father during their incarceration. CYS facilitated the visitations and transported Ka.C. to visit with his parents at the respective facilities where they were serving their judgments of sentence.

Father's progress toward alleviating the causes of his son's placement was negligible. On April 7, 2016, the juvenile court changed Ka.C.'s permanency goal as to Father from reunification to adoption.[2] On January 17, 2017, this Court affirmed. **See In the Interest of: K.C.**, 160 A.3d 256 (Pa.Super. 2017) (unpublished memorandum). Petitions to terminate the parental rights of Mother and Father are currently pending before the orphans' court.

During the March 1, 2017 permanency review hearing, CYS requested to reduce the frequency of Ka.C.'s weekly two-and-one-half hour supervised visitations with Father at SCI Graterford in light of the fact that the case was proceeding towards the termination of parental rights and the potential

---

[2] The trial court declined to alter the goal as to Mother; however, she subsequently consented to the goal change on December 21, 2016.

adoption by maternal relatives.[3]   CYS framed its request as the natural progression of the case since adoption was the focus of the agency's resources.  Specifically, the agency argued, "It makes no sense to the child. It's not in the child's best interests that we continue the frequency of the visits."   N.T., 3/1/17, at 33.   CYS proposed reducing the supervised visitation from weekly to monthly in order to reduce the burden upon three-year-old Ka.C. of the six-hour time commitment, including travel to the facility, once every week.   *Id*. at 34.   In addition, CYS asserted that the value of the visitations were diminished by Father's assignment to a restrictive housing unit where he was forced to interact with Ka.C. from behind glass.  *Id*. at 35-36.

The guardian *ad litem* acknowledged that the six-hour time commitment was taxing upon Ka.C., but disagreed with limiting the frequency of the visitations to a single visit per month.  At the close of the hearing, the trial court denied CYS's request to limit the visitations to one per month.   However, it modified the visitation schedule so that, while Father remained in the restrictive housing unit, he would exercise supervised visitation for one hour bi-weekly, and, following Father's anticipated return to a less restrictive unit on March 22, 2017, the duration of the visitations

_____

[3] As of March 1, 2017, the orphans' court had not scheduled a trial date to address CYS's petition to terminate the parental rights of Mother and Father.

would increase to two and one-half hours. *Id*. at 52-53. The trial court memorialized this arrangement in an order entered on March 7, 2017. This timely appeal followed.

Father complied with Pa.R.A.P. 1925(a)(2)(i) by filing a concise statement of errors complained of on appeal concomitant with his notice of appeal. He presented one issue, which he reiterates on appeal as follows: "Whether the Trial Court abused its discretion and/or erred as a matter of law and fact by reducing Father's visitation with the child to bi-weekly visits with the child[.]" Appellant's brief at 5.[4]

We review the juvenile court's decision regarding the frequency of visitation in dependency proceeding for an abuse of discretion. *In Interest of M.B.*, 674 A.2d 702, 705 (Pa.Super. 1996) (juvenile court did not abuse its discretion in reducing frequency of visitation from monthly to quarterly). Where, as here, the child's permanency goal is adoption rather than reunification, the juvenile court may modify visitation so long as it satisfies the best interests of the child, a standard that we have deemed, "less protective of parents' visitation rights than the grave threat standard [utilized when the goal remains reunification]." *In Interest of L.T.*, 158

_____

[4] The guardian *ad litem* filed a brief in support of the juvenile court's order reducing the frequency and duration of the supervised visitations. Mother submitted notice that she has no interest in the outcome of this appeal.

A.3d 1266, 1283 (Pa.Super. 2017) (quoting *In re L.V.*, 127 A.3d 831 (Pa.Super. 2015)).

At the outset, we must determine whether we have jurisdiction to review the order on appeal. Our jurisdiction extends to review of final orders, interlocutory appeals as of right, interlocutory appeals by permission, and collateral orders. *See* Pa.R.A.P. 311, 312, 341, and 1311. The March 7, 2017 order adjusting the frequency and duration of Father's supervised visitation with Ka.C. does not fall within any of the foregoing classifications of reviewable orders. It is not a final order because it does not dispose of all claims and parties, *i.e.*, the order did not grant or deny a request to change Father's status in the ongoing dependency proceedings, and the court's adjustments are subject to further modification based upon evidence adduced at future permanency review hearings—not to mention CYS's pending petition to terminate Father's parental rights.

As it relates to finality, this Court confronted a similar issue in *In re J.S.C.*, 851 A.2d 189 (Pa.Super. 2004), and concluded that our Supreme Court's statement in *In re H.S.W.C.–B.*, 836 A.2d 908, 911 (Pa. 2003), that "All orders dealing with custody or visitation, with the exception of enforcement or contempt proceedings, are final when entered[,]" does not apply to orders addressing visitation in the context of dependency. We reasoned that the High Court's discussion of "visitation" in *In re H.S.W.C.-B.*, "referred solely to orders entered pursuant to the Adoption Act, 23

Pa.C.S.A. § 2501, *et. seq.*, and is not controlling in our analysis of the finality of visitation orders entered following adjudication under the Juvenile Act[.]" *In re J.S.C.*, *supra* at 191. Thus, the order is not a final appealable order pursuant to *H.S.W.C.-B.*

Similarly, the order adjusting Father's visitation is not defined as final by statute, and the trial court did not certify the order as final pursuant to Rule 341(c). Likewise, the appeal from a juvenile court order reducing supervised visitation is not an interlocutory appeal as of right pursuant to Rule 311, and Father did not seek permission to appeal the order pursuant to Pa.R.A.P. 312 and 1311. As the order being appealed is neither final, appealable as of right or by permission, nor asserted to be a collateral order pursuant to the narrow application of Rule 311, we lack jurisdiction to review it. Thus, we are constrained to quash the appeal.

Nevertheless, in the abundance of caution, we observe that, had we confronted the merits of Father's appeal, we would have denied relief. As noted *supra*, when the permanency goal is no longer reunification, the juvenile court has discretion to reduce visitation as long as the decrease satisfies the child's best interests. *In Interest of L.T.*, *supra* at 1283 ("This alternative standard recognizes that when reunification is unlikely, the parent-child relationship is no longer paramount."). Father asserts that the juvenile court abused its discretion in reducing the supervised visitations because the reduction is contrary to his son's best interest. We disagree.

- 6 -

The following factors are relevant in determining whether visitation is in a child's best interest:

> (1) length of separation from natural parents; (2) effect of visitation on the child; (3) the age, sex and health of the child; (4) the emotional relationship between child and parents; (5) the special needs of the child; and (6) the effect on the child's relationship with the current caregiver, usually the foster parents. Most importantly, the focus must be on the best interests of the child, in light of the fact that the natural family is not likely to be reunited.

*In Interest of M.B.*, *supra* at 705-706.

Instantly, the trial court addressed each of these considerations and concluded that reducing the frequency of the supervised visitations, and temporarily shortening their duration would produce an outcome that satisfied Ka.C.'s best interests. In summary, the court determined that Father's lengthy, continuing separation from Ka.C. weighs in favor of gradually reducing the scope of supervised visitation pursuant to the first factor. As it relates to factors two, three, and five, the juvenile court determined that the weekly travel was burdensome on Ka.C. and that reducing the frequency of the visits to twice per month satisfied the best interests of the three-year-old child in light of his tender age and temperament. Phrased plainly, the juvenile court reasoned that "a reduction in visits would seem to be a positive for the Child's health in terms of him not having to spend the time and energy to spend six to eight hours visiting Father each week." Trial Court Opinion, at 7. Finally, in relation to factors

four and six regarding Ka.C's emotional relationships with Father and his pre-adoptive parents, respectively, the juvenile court determined that, while Father's incarceration prevented him from serving in any parental capacity, Ka.C. developed a strong bond with his pre-adoptive parents that continues to thrive.

In sum, the juvenile court concluded,

> When viewing the circumstances surrounding this case, and in light of the fact that the Child will likely never reunite with his natural parents, this Court reached the seemingly only rational determination that it could, that it was in the Child's best interest to begin a gradual tapering off of parental visitation. As time passes and assuming the case continues to head in the direction of adoption, this Court may consider tapering the visits again in the Child's best interests and will make that determination based on the circumstances then and there existing.

*Id*. at 9.

Upon review of the certified record, parties' briefs, and applicable law, we find that Father's argument challenging the juvenile court's exercise of discretions is unpersuasive. The juvenile court applied the relevant factors to the facts of this case and made a reasoned decision based upon the child's best interests to reduce the frequency and duration of Father's supervised visitations with Ka.C. at SCI Graterford. We observe that, in reaching its decision, the court expressly declined to contract the visitation schedule as severely as CYS initially requested, and it fashioned a schedule that fostered Father's contact with Ka.C. notwithstanding the goal change

order and the pending petition to terminate Father's parental rights. As the certified record supports the juvenile court's resolution, we discern no abuse of discretion.

Appeal vacated.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/20/2017