J-S35004-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.B., A MINOR, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.W., FATHER | : | No. 578 EDA 2019 |

Appeal from the Order Entered January 28, 2019
in the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-FN-002498-2015
FID: 51-FN-002498-2015

BEFORE:    OLSON, J., STABILE, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED JANUARY 08, 2020**

A.W. (Father) appeals from the permanency review order entered on January 28, 2019, which, pursuant to the Juvenile Act, 42 Pa.C.S. § 6351, suspended his visitation with his son, L.B. (Child), who was born in October 2014.  We vacate the order and remand for proceedings consistent with this memorandum.

The juvenile court set forth the relevant factual and procedural history of this case.

> On November 24, 2015, [] Child was adjudicated dependent.[1] At the adjudicatory hearing, [the juvenile c]ourt found that, "based upon the findings of abuse, neglect[,] and/or dependency of the minor child[,]" it was in the best interest of the Child to [be removed] from [M]other's home.  Father first showed up and made himself available to court proceedings on May 2, 2017.  On July 17, 2017, [the trial court] ordered supervised visits for

---

[1] The juvenile court granted the petition of the Philadelphia Department of Human Services (DHS) to adjudicate Child dependent.

*Retired Senior Judge assigned to the Superior Court.

Father.[2]  On February 2, 2018, Father was fully compliant with his objectives.  Father and Child were referred to [Behavioral Health Services (BHS)] for consultations and[/]or evaluations. At that hearing, [the juvenile court] also ordered family therapy to be implemented[,] if appropriate. On October 29, 2018, [the juvenile court] increased Father's visitation rights and ordered [his] visits to be from Friday to Sunday[,] overnight[,] on a weekly basis.

The overnight weekend visits continued until [] Child reported that Father hit him during one of the overnight visits. At which point, the visits were suspended pending investigation. It was further reported that [] Child is "extremely fearful" of Father.  Child also alleged that Father had abused him during the weekend overnight visits.   On January 24, 2019, [] Child completed an intake for trauma therapy.   When asked the reason for the trauma therapy, [Shanese] Streams, the [Community Umbrella Agency (CUA)] case manager, testified that there was an incident that happened in December where [] Child "had a visible bruise on his forehead and a report was generated through the hotline."  [] Streams testified that Father was the alleged perpetrator in that report and that visits were suspended because of that report.  [] Streams also indicated that she was part of the intake for [] Child's trauma therapy. She indicated that during the session, the Child "became visibly agitated when dad was mentioned."  She indicated that at the start of the intake, [] Child was okay, but once the therapist started mentioning [Father], [] Child began "pinching" and "hitting" [the] foster parent, and was "cowering underneath the desk."

[] Streams further testified that since the visitations were suspended, [the] foster parent has reported that [] Child has been a lot better in the home and hasn't had as many tantrums and outbursts.  [] Streams also testified that Father's goals were "to maintain compliance and cooperation with the court order, CUA involvement, developing parenting skills and comply with

---

[2] That same day, the court entered a decree terminating Mother's parental rights to Child.  This Court affirmed that decree on February 7, 2018. **In Interest of L.B.**, 185 A.3d 1094 (Pa. Super. 2018) (unpublished memorandum).

> BHS services." [] Streams further indicated that she would rate Father's level of compliance with his goals as "minimal[.]"
>
> Based on the foregoing testimony, [the juvenile court] issued a decree suspending Father's visits with the Child pending the recommendation of the Child's therapist.

Juvenile Court Opinion, 4/2/2019, at 1-3 (footnote added) (internal citations omitted).

On February 21, 2019, Father filed a timely notice of appeal along with a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On appeal, Father contends that the juvenile court erred in suspending his visits with Child. Father's Brief at 3. Specifically, Father argues that his visitation with Child is an issue of law that should be for a judge or master to determine, not a therapist. *Id.* Father claims that a therapist may not know the legal "grave threat" standard,[3] and may not want to make a decision that potentially involves liability on the part of the therapist. *Id.* Most importantly, Father alleges that he would not have an opportunity to have a hearing, present evidence, and cross-examine the therapist if the therapist makes a decision involving visitation. *Id.* Accordingly, Father contends that this Court should vacate the order entered by the juvenile court. *Id*. at 7.

---

[3] The "grave threat" standard is met when "the evidence clearly shows that a parent is unfit to associate with his or her children." *In re C.B.*, 861 A.2d 287, 294 (Pa. Super. 2004).

Before we consider this issue, we must determine whether this Court has jurisdiction over the instant appeal. "'[S]ince we lack jurisdiction over an unappealable order[,] it is incumbent on us to determine, *sua sponte* when necessary, whether the appeal is taken from an appealable order.'" ***Gunn v. Automobile Ins. Co. of Hartford, Connecticut***, 971 A.2d 505, 508 (Pa. Super. 2009), *quoting* ***Kulp v. Hrivnak***, 765 A.2d 796, 798 (Pa. Super. 2000).

"An appeal lies only from a final order, unless permitted by rule or statute." ***Stewart v. Foxworth***, 65 A.3d 468, 471 (Pa. Super. 2013). Generally, a final order is one that disposes of all claims and all parties. ***See*** Pa.R.A.P. 341(b). Here, the order on appeal fails to satisfy the requirements of Rule 341(b), as it did not dispose of all claims and all parties. Further, the order provided that a permanency review hearing would be held on April 16, 2019. Thus, the January 28, 2019 order is not a final order.

Accordingly, for this order to be appealable, it must satisfy the requirements of the collateral order doctrine.

> The "collateral order doctrine" exists as an exception to the finality rule and permits immediate appeal as of right from an otherwise interlocutory order where an appellant demonstrates that the order appealed from meets the following elements: (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost. ***See*** Pa.R.A.P. 313.
>
> Our Supreme Court has directed that Rule 313 be interpreted narrowly so as not to swallow the general rule that

- 4 -

only final orders are appealable as of right. To invoke the collateral order doctrine, each of the three prongs identified in the rule's definition must be clearly satisfied.

*Interest of J.M.*, ___ A.3d ___, 2019 WL 4385685, at *6-7 (Pa. Super. 2019) (quoting *In re W.H.*, 25 A.3d 330, 335 (Pa. Super. 2011) (some citations omitted)).

We begin our analysis by considering this Court's decision in *J.M.* In *J.M.*, this Court analyzed the appealability of a permanency review order, which did not change the parent's goal,[4] but prohibited "visits at [the mother's] home if [the m]other or [the c]hildren tested positive for drugs." *Id*. at *1. We held that this order did not satisfy the second and third prongs of the collateral order doctrine and quashed the appeal.

Essentially, because the order did not prohibit the mother's visits with her children in their entirety, but rather placed restrictions on those visits, we concluded that the second and third prongs of the collateral doctrine were not satisfied. *See id*. at *11 (pointing out that with respect to the second prong, or whether the order involved a right "too important to be denied review," "there is no indication in the record that [the m]other was denied the right to see [the c]hildren in any fashion, or was denied the right to visit with children in her home environment indefinitely); *id*. at *12 (pointing out that with respect to the issue of whether the mother's claim

---

[4] "[A]n order granting or denying a goal change request, in a case involving a dependent child, is an appealable order." *In re C.M.*, 882 A.2d 507, 513 (Pa. Super. 2005).

would be irreparably lost, the "order did not deny home visits indefinitely; it simply required [the m]other and [the c]hildren to be drug-free before visiting at [the m]other's home"). Thus, because the order in *J.M.* failed to satisfy both the second and third prongs of the collateral order doctrine, this Court did not consider the first prong. *See id*. at *11 ("leav[ing] for another day the resolution of what constitutes the cause of action in a dependency matter, and whether a permanency review order placing restrictions on a parent's visitation is separable from the main cause of action").

While the order in the instant matter bears some similarity to the order at issue in *J.M.*, there are important distinctions. First and foremost, the instant order denies Father visits altogether, and it is unclear when those visits may resume.[5]

> As a usual rule, parental visitation is not denied except where a grave threat to the child can be shown. The policy underlying the "grave threat" standard reflects the desirability of continuing contact between the parent and the child. It underscores the importance of each parent's maintaining a meaningful and sustaining relationship with the child.

*In Interest of M.B.*, 674 A.2d 702, 705 (Pa. Super. 1996).

---

[5] There is some conflicting information in the record regarding when visits are to resume. At the hearing, the trial court stated that visits "can begin upon the therapist's recommendation." N.T., 1/28/2019, at 17. In the order, the trial court stated that "Father's visits with the child are to remain suspended upon the recommendation of the child's therapist." Order, 1/28/2019. In any event, what is clear is the fact that Father's visits with Child are suspended and will remain that way for a period of time.

Here, Father contends that the trial court erred by outsourcing the decision regarding the resumption of Father's visitation to a therapist, which according to Father, denies him due process. Father also contends that the juvenile court entered an order denying visitation without a finding that he posed a grave threat to Child. This purported error may well result in much more than the denial of a visit or series of visits. It ultimately can affect a custody determination or even the termination of parental rights. A parent denied any visitation can be "behind the eight ball" for a child's entire minority. Thus, because this order resulted in the complete denial of visitation, it is both a "right … too important to be denied review," and "if review is postponed until final judgment in the case, the claimed right will be irreparably lost." Pa.R.A.P. 313(b). Accordingly, unlike the order in *J.M.*, this order satisfies both the second and third prongs of the collateral order doctrine.

We now turn to the first prong of the collateral order doctrine, which was not addressed in *J.M.* We must consider whether the order appealed from "is separable from and collateral to the main cause of action." Pa.R.A.P. 313(b). In doing so, we recognize the caveat set forth in *J.M.*

> When reviewing our treatment of dependency cases as a whole, it is apparent that this Court has not been consistent with its interpretation of "the main cause of action" for purposes of R.A.P. 313. Sometimes we have placed the emphasis on the underlying dependency adjudication and disposition, even if the case has progressed into the permanency review stage, … other times we have focused on one of the broad goals in the

> particular stage of the case, … and still other times we have looked to the purpose of the particular hearing….

***J.M.***, 2019 WL 4385685, at *9.

Even though our treatment of dependency cases has not been consistent, as pointed out in ***J.M.***, our Supreme Court has also held that "the collateral order rule's three-pronged test must be applied independently to each distinct legal issue over which an appellate court is asked to assert jurisdiction pursuant to Rule 313." ***Rae v. Pennsylvania Funeral Directors Ass'n***, 977 A.2d 1121, 1130 (Pa. 2009).

Instantly, Father assails the juvenile court's decision to outsource to a therapist the determination of when his visits with Child may or may not resume. Father's Brief at 3-4. Among other things, Father is concerned that a therapist is not familiar with the aforementioned "grave threat" standard. ***Id***. at 4. Reviewing the appealability of this order in light of the issue presented, it is clearly separable from and collateral to the main cause of action, no matter how that cause of action is defined. Thus, we conclude that this order satisfies the first prong of the collateral order doctrine, because Father presents a distinct legal issue that is not at all related to the underlying issues in this case.

On appeal, Father argues that the trial court erred in by "giving judicial power to the therapist to decide when visits can occur." Father's Brief at 4. Father argues that "only a [j]udge or a master should decide when visits should or should not occur [because a] therapist does not have the legal

background to make a legal decision." *Id*. Importantly, Father argues that a therapist may not understand the legal grave-threat standard. *Id*.

Our scope and standard of review in dependency cases is as follows:

> [W]e must accept the facts as found by the trial court unless they are not supported by the record. Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate. We review for abuse of discretion. Our scope of review, accordingly, is of the broadest possible nature. It is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Nevertheless, we accord great weight to the court's fact-finding function because the court is in the best position to observe and rule on the credibility of the parties and witnesses.

*C.M.*, 882 A.2d at 513.

At each permanency review hearing, the juvenile court is required to determine "whether the visitation schedule for the child with the child's guardian is adequate, unless a finding is made that visitation is contrary to the safety or well-being of the child." Pa.R.Juv.P. 1608(D)(1)(q).

> In reviewing a trial court's denial of visitation, [this Court] look[s] to whether there exists clear and convincing evidence that visitation would present a grave threat to the child. When making this determination, we must take into consideration the express legislative policy of preservation of the family. Therefore, the trial court is required to consider options such as structured visitation with the aid of an agency; only where there are no practicable visitation options can visitation be denied.

*In Interest of Coast*, 561 A.2d 762, 771-72 (Pa. Super. 1989) (internal citations omitted).

- 9 -

In its opinion, the juvenile court concludes that "Father's conduct during the December incident posed a grave threat to [] Child." Juvenile Court Opinion, 4/2/2019, at 3. This may be true; however, it is Father's position that the juvenile court erred by then outsourcing the decision of when those visits may or may not resume to a therapist, rather than to itself as the ultimate arbiter of whether Father poses a grave threat to Child or if other less restrictive measures are available rather than suspending visits altogether. The rules, as discussed *supra*, provide that decisions regarding visitation are to be made by the court. Thus, we agree with Father that the court erred in this respect. Accordingly, we vacate the order and remand for proceedings consistent with this memorandum.

In doing so, we point out that Child has been in placement since 2015, and his mother's parental rights have already been terminated. Father has been working towards reunification since 2017, when he first made himself available to DHS. Due to the lengthy history of this case, it is necessary that the trial court move with deliberate speed in determining whether Father poses a grave threat to Child and resolving this visitation issue, as Child has been awaiting permanency for almost four years at this juncture.

Order vacated. Case remanded. Jurisdiction relinquished.

Judge Stabile files a Concurring Statement in which

Judge Strassburger joins.

Judge Olson files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/8/20