# RULE 1120.  DEFINITIONS

* * *

**AGE-APPROPRIATE OR DEVELOPMENTALLY-APPROPRIATE is used to describe the: 1) activities or items that are generally accepted as suitable for children of the same chronological age or level of maturity or that are determined to be developmentally appropriate for a child, based on the development of cognitive, emotional, physical, and behavioral capacities that are typical for an age or age group; or 2) in the case of a specific child, activities or items that are suitable based on the developmental stages attained by the child with respect to the cognitive, emotional, physical, and behavioral capacities of the child.**

* * *

**CAREGIVER is a person with whom the child is placed in an out-of-home placement, including a resource family or individual designated by a county agency or private agency.  The resource family is the caregiver for any child placed with them.**

* * *

**REASONABLE AND PRUDENT PARENT STANDARD is the standard, characterized by careful and sensible parental decisions that maintain the health, safety, and best interests of a child while encouraging the emotional and developmental growth of the child, that a caregiver must use when determining whether to allow a child to participate in extracurricular, enrichment, cultural, and social activities.**

* * *

**Official Note:**  Rule 1120 adopted August 21, 2006, effective February 1, 2007.  Amended March 19, 2009, effective June 1, 2009.  Amended December 24, 2009, effective immediately.  Amended April 21, 2011, effective July 1, 2011.  Amended April 29, 2011, effective July 1, 2011.  Amended May 20, 2011, effective July 1, 2011.  Amended June 24, 2013, effective January 1, 2014. Amended October 21, 2013, effective December 1, 2013. Amended July 28, 2014, effective September 29, 2014.  Amended July 13, 2015, effective October 1, 2015.  **Amended December 9, 2015, effective January 1, 2016.**

*Committee Explanatory Reports:*

Final Report explaining the provisions of Rule 1120 published with the Court's Order at 36 Pa.B.5571 (September 2, 2006).  Final Report explaining the amendments to Rule 1120 published with the Court's Order at 39 Pa.B. 1614 (April 4, 2009).  Final Report explaining the amendments to Rule 1120 published with the Court's Order at 40 Pa.B. 222 (January 9, 2010).  Final Report explaining the amendments to Rule 1120 published with the Court's Order at 41 Pa.B. 2319 (May 7, 2011).  Final Report explaining the amendments to Rule 1120 published with the Court's Order at 41 Pa.B. 2413 (May 14, 2011). Final Report explaining the amendments to Rule 1120 published with the Court's Order at 41 Pa.B. 2839 (June 4, 2011).  Final Report explaining the amendments to Rule 1120 published with the Court's Order at 43 Pa.B. 3941 (July 13, 2013). Final Report explaining the amendments to Rule 1120 published with the Court's Order at 43 Pa.B. 6658 (November 9, 2013).Final Report explaining the amendments to Rule 1120 published with Court's Order at 44 Pa.B. 5447 (August 16, 2014). Final Report

explaining the amendments to Rule 1120 published with the Court's Order at 45 Pa.B. 3987 (July 25, 2015). **Final Report explaining the amendments to Rule 1120 published with the Court's Order at - Pa.B. - (-).**

**RULE 1608.  PERMANENCY HEARING**

A. **Purpose and timing of hearing.**  For every case, the court shall conduct a permanency hearing at least every six months for purposes of determining or reviewing:

    1)  the permanency plan of the child;

    2)  the date by which the goal of permanency for the child might be achieved; and

    3)  whether the placement continues to be best suited to the safety, protection, and physical, mental, and moral welfare of the child.

B. **Recording.**  The permanency hearing shall be recorded.

C. **Evidence.**

    1)  Any evidence helpful in determining the appropriate course of action, including evidence that was not admissible at the adjudicatory hearing, shall be presented to the court.

    2)  If a report was submitted pursuant to Rule 1604, the court shall review and consider the report as it would consider all other evidence.

D. **Court's findings.**

    1)  **Findings at all six-month hearings.**  At **[the]each** permanency hearing, the court shall enter its findings and conclusions of law into the record and enter an order pursuant to Rule 1609.  On the record in open court, the court shall state:

        a)  the appropriateness of the placement;

        b)  the appropriateness, feasibility, and extent of compliance with the permanency plan developed for the child;

        c)  the appropriateness and feasibility of the current placement goal for the child;

        d)  the likely date by which the placement goal for the child might be achieved;

        e)  whether reasonable efforts were made to finalize the permanency plan in effect;

f) whether the county agency has made services available to the guardian, and if not, why those services have not been made available;

g) the continued appropriateness of the permanency plan and the concurrent plan;

h) whether the county agency has satisfied the requirements of Rule 1149 regarding family finding, and if not, the findings and conclusions of the court on why the requirements have not been met by the county agency;

i) whether the child is safe;

j) if the child has been placed outside the Commonwealth, whether the placement continues to be best suited to the safety, protection, and physical, mental, and moral welfare of the child;

k) the services needed to assist a child who is **[sixteen]fourteen** years of age or older to make the transition to **[independent living]a successful adulthood**, including:

   i) the specific independent living services or instructions that are currently being provided by the county agency or private provider;

   ii) the areas of need in independent living instruction that have been identified by the independent living assessment completed pursuant to the Chafee Act, 42 U.S.C. § 671 *et seq*.;

   iii) the independent living services that the child will receive prior to the next permanency review hearing;

   iv) whether the child is in the least restrictive, most family-like setting that will enable him to develop independent living skills;

   v) the efforts that have been made to develop and maintain connections with supportive adults regardless of placement type;

   vi) whether the child is making adequate educational progress to graduate from high school or whether the child is enrolled in another specified educational program that will assist the child in achieving self-sufficiency;

   vii) the job-readiness services that have been provided to the child and the employment/career goals that have been established;

4

viii) whether the child has physical health or behavioral health needs that will require continued services into adulthood; and

ix) the steps being taken to ensure that the youth will have stable housing or living arrangements when discharged from care;

l) any educational, health care, and disability needs of the child and the plan to ensure those needs are met;

m) if a sibling of a child has been removed from the home and is in a different setting than the child, whether reasonable efforts have been made to place the child and sibling of the child together or whether such joint placement is contrary to the safety or well-being of the child or sibling; **[and]**

n) if the child has a sibling, whether visitation of the child with that sibling is occurring no less than twice a month, unless a finding is made that visitation is contrary to the safety or well-being of the child or sibling**[.];**

o) **whether sufficient steps have been taken by the county agency to ensure the caregiver is exercising the reasonable and prudent parent standard; and**

p) **whether sufficient steps have been taken by the county agency to ensure the child has been provided regular, ongoing opportunities to engage in age-appropriate or developmentally-appropriate activities, including:**

   i) **consulting the child in an age-appropriate or developmentally-appropriate manner about the opportunities to participate in activities; and**

   ii) **identifying and addressing any barriers to participation.**

2) **Another Planned Permanent Living Arrangement (APPLA) for Children Sixteen Years of Age or Older. APPLA shall not be utilized for any child under the age of sixteen. At each permanency hearing for a child who is sixteen years or older and has a permanency goal of APPLA, the following additional considerations, inquiry, and findings shall be made by the court:**

   a) **Court's APPLA Considerations. Before making its findings pursuant to paragraph (D)(2)(c), the court shall consider evidence, which is obtained as of the date of the hearing, and entered into the record concerning.**

5

> > i) **the intensive, ongoing, and unsuccessful efforts made to:**
>
> > > A) **return the child home; or**
> > >
> > > B) **secure a placement for the child with a fit and willing relative, a legal guardian, or an adoptive parent;**
>
> > ii) **the specific services, including the use of search technology and social media to find biological family members and kin, as well as permanency services that have been provided to the child that serve as the intensive ongoing, and unsuccessful efforts to achieve reunification, adoption, or placement with a guardian or a fit and willing relative;**
>
> > iii) **the full name of at least one identified supportive adult with whom the child has significant connections;**
>
> > iv) **how each identified supportive adult has formalized the connection with the child;**
>
> > v) **the specific services that will be provided by the agency to support and maintain the connection between the child and identified supportive adult(s); and**
>
> > vi) **the specific planned, permanent placement or living arrangement for the child that will provide the child with stability.**

b) **Court's Inquiry of Child's Desired Permanency Outcome. Before making its findings pursuant to paragraph (D)(2)(c), the court shall ask the child about the child's desired permanency outcome.**

c) **Court's APPLA Findings. After making all the findings of paragraph (D)(1) and before assigning the permanency goal of APPLA, at each subsequent permanency hearing, based upon the considerations and inquiry provided in paragraph (D)(2)(a)&(b) and any other evidence deemed appropriate by the court, the court shall state in open court on the record the following:**

> i) **reasons why APPLA continues to be the best permanency plan for the child; and**
>
> ii) **compelling reasons why it continues not to be in the best interests of the child to:**

**A) return home;**

**B) be placed for adoption;**

**C) be placed with a legal guardian; and**

**D) be placed with a fit and willing relative.**

[2]3) **Additional findings for fifteen of last twenty-two months.** If the child has been in placement for fifteen of the last twenty-two months, the court may direct the county agency to file a petition to terminate parental rights.

E. **Advanced Communication Technology.** Upon good cause shown, a court may utilize advanced communication technology pursuant to Rule 1129.

F. **Family Service Plan or Permanency Plan.**

1) The county agency shall review the family service plan or permanency plan at least every six months, including all family finding efforts pursuant to Rule 1149.

2) The family service plan or permanency plan shall identify which relatives and kin were included in its development and the method of that inclusion.

3) If the plan is modified, the county agency shall follow the filing and service requirements pursuant to Rule 1345.

4) The parties and when requested, the court, shall be provided with the modified plan at least fifteen days prior to the permanency hearing.

**COMMENT**

*See* 42 Pa.C.S. §§ 6341, 6351.

Permanency planning is a concept whereby children are not relegated to the limbo of spending their childhood in foster homes, but instead, dedicated effort is made by the court and the county agency to rehabilitate and reunite the family in a reasonable time, and failing in this, to free the child for adoption. *In re M.B.*, **[449 Pa. Super. 507, ]**674 A.2d 702,**704** (**Pa. Super. Ct.** 1996) **[*quoting*](quoting** *In re Quick*, **[384 Pa. Super. 412, ]**559 A.2d 42 (**Pa.** 1989)**)**.

To the extent practicable, the judge or master who presided over the adjudicatory and original dispositional hearing for a child should preside over the permanency hearing for the same child.

Pursuant to paragraph (A), courts are to conduct a permanency hearing every six months. Courts are strongly encouraged to conduct more frequent permanency hearings, such as every three months, when possible.

The court may schedule a three-month hearing or conference. At the three-month hearing, the court should ensure that: 1) services ordered at the dispositional hearing pursuant to Rule 1512 are put into place by the county agency; 2) the guardian who is the subject of the petition is given access to the services ordered; 3) the guardian is cooperating with the court-ordered services; and 4) a concurrent plan is developed if the primary plan may not be achieved.

A three-month hearing or conference is considered best practice for dependency cases and is highly recommended. The court should not wait until six months has elapsed to determine if the case is

progressing.  Time to achieve permanency is critical in dependency cases.  In order to seek reimbursement under Title IV-E of the Social Security Act, 42 U.S.C. § 601 *et seq.*, a full permanency hearing is to be conducted every six months**, including required findings and conclusions of law on the record pursuant to paragraph (D)**.

**In addition to the permanency hearing contemplated by this rule, courts may also conduct additional and/or more frequent intermittent review hearings or status conferences that address specific issues based on the circumstances of the case and assist the court in ensuring timely permanency.**

Every child should have a concurrent plan, which is a secondary plan to be pursued if the primary permanency plan for the child cannot be achieved.  *See Comment* to Rule 1512.  For example, the primary plan may be reunification with the guardian.  If the guardian does not substantially comply with the requirements of the court-ordered services, subsidized legal guardianship may be utilized as the concurrent plan.  Because of time requirements, the concurrent plan is to be in place so that permanency may be achieved in a timely manner.

Pursuant to paragraph (D)(1)(h), the court is to determine whether the county agency has reasonably satisfied the requirements of Rule 1149 regarding family finding, including the location and engagement of relatives and kin at least every six months, prior to each permanency hearing.  If the county agency has failed to meet the diligent family finding efforts requirements of Rule 1149, the court is to utilize its powers to enforce this legislative mandate.  *See* 62 P.S. § 1301 *et seq.***; [S]***see also* Rules 1210(D)(8), 1242(E)(3), 1409(C), 1609(D), and 1611(C) and *Comments* to Rules 1242, 1408, 1409, 1512, 1514, 1515, 1609, and 1611.

When making its determination for reasonable efforts made by the county agency, the court is to consider family finding.  *See also* Rules 1240(B)(6), 1242(C)(2)&(3)(b)&(c) and 1330(B)(6) and *Comments* to Rules 1242, 1330, 1409, 1515, 1609, and 1611 for reasonable efforts determinations.

***See* 42 U.S.C. § 675(5)(A)-(I) for development of a transition plan pursuant to paragraph (D)(1)(k).**

**Pursuant to paragraph (D)(1)(o), the county agency is to testify and enter evidence into the record on how it took sufficient steps to ensure the caregiver is exercising the reasonable and prudent parent standard.  For the definition of "caregiver" and the "reasonable and prudent parent standard," see Rule 1120.  Pursuant to paragraph (D)(1)(p), when documenting its steps taken, the county agency is to include how it consulted with the child in an age-appropriate or developmentally-appropriate manner about the opportunities of the child to participate in activities.  For the definition of "age-appropriate or developmentally-appropriate," see Rule 1120. These additions have been made to help dependent children have a sense of normalcy in their lives.  These children should be able to participate in extracurricular, enrichment, cultural, and social activities without having to consult caseworkers and ask the court's permission many days prior to the event. *See also* Preventing Sex Trafficking and Strengthening Families Act (P.L. 113-183), 42 U.S.C. §§ 675 and 675a (2014).**

**Pursuant to paragraph (D)(2), there are additional considerations, inquiries, and findings when the court conducts a permanency hearing for a child, who is sixteen years of age or older and has a permanency plan of APPLA.  APPLA should only be utilized as a permanency plan when all other alternatives have been exhausted.  Even after exhaustive efforts have been made, the county agency should identify at least one supportive adult to be involved in the life of the child.  Diligent efforts to search for relatives, guardians, adoptive parents, or kin are to be utilized. *See* Rule 1149 on family finding.  Independent living services should also be addressed.  Under paragraph (D)(2)(a)(i)(B), a fit and willing relative may include adult siblings.**

**Pursuant to paragraph (D)(2)(b), the court is to engage the child in conversation to ascertain the child's desired permanency outcome.  The conversation is to be between the child and the court, not the guardian *ad litem* answering for the child.**

**After all the requirements of paragraph (D)(1) and (D)(2)(a) and (b) have been made, the court is to state in open court on the record the specific reasons why APPLA continues to be the best permanency plan for the child and the compelling reasons why it continues not to be in the best interests of the child to return home or be placed for adoption, with a legal guardian, or with a fit and willing relative.  *See* paragraph (D)(2)(c).  The standards of this rule make choosing the plan of APPLA difficult to ensure that it is the last alternative available for the child.   Additionally, this rule requires the court to state its finding in open court on the record.  If the court takes a**

**case under advisement, it is to continue the hearing until it is ready to make these findings. The time requirements of the Rules are to be followed when taking a case under advisement.**

Pursuant to paragraph (D)(**[2]3**), a "petition to terminate parental rights" is a term of art used pursuant to 23 Pa.C.S. § 2511 and Pa.**[R.]**O.C. Rule 15.4 to describe the motion terminating parental rights. This does not refer to the "petition" as defined in Pa.R.J.C.P. 1120.

The court is to move expeditiously towards permanency. A goal change motion may be filed at any time.

**[In addition to the permanency hearing contemplated by this rule, courts may also conduct additional and/or more frequent intermittent review hearings or status conferences, which address specific issues based on the circumstances of the case, and which assist the court in ensuring timely permanency.]**

A President Judge may allow Common Pleas Judges to "wear multiple hats" during a proceeding by conducting a combined hearing on dependency and Orphans' Court matters. *See* 42 Pa.C.S. § 6351(i); *see also In re Adoption of S.E.G.*, **[587 Pa. 568, ]**901 A.2d 1017 (**Pa.** 2006), where involuntary termination occurred prior to a goal change by the county agency.

For family service plan requirements, see 55 **[Pᴀ Cᴏᴅᴇ]Pa. Code** §§ 3130.61 **[&]and** 3130.63.

**[***See*** 42 U.S.C. § 675(5)(A)-(H) for development of a transition plan pursuant to paragraph (D)(1)(k).]**

*See* Rule 1136 regarding *ex parte* communications.

*See* Rule 1610 for permanency hearing for children over the age of eighteen.

**Official Note:** Rule 1608 adopted August 21, 2006, effective February 1, 2007. Amended December 18, 2009, effective immediately. Amended April 21, 2011, effective July 1, 2011. Amended April 29, 2011, effective July 1, 2011. Amended October 21, 2013, effective December 1, 2013. Amended July 13, 2015, effective October 1, 2015. **Amended December 9, 2015, effective January 1, 2016.**

*Committee Explanatory Reports:*

Final Report explaining the provisions of Rule 1608 published with the Court's Order at 36 Pa.B. 5571 (September 2, 2006). Final Report explaining the amendments to Rule 1608 published with the Court's Order at 40 Pa.B. 21 (January 2, 2010). Final Report explaining the amendments to Rule 1608 published with the Court's Order at 41 Pa.B. 2319 (May 7, 2011). Final Report explaining the amendments to Rule 1608 published with the Court's Order at 41 Pa.B. 2430 (May 14, 2011). Final Report explaining the amendments to Rule 1608 published with the Court's Order at 43 Pa.B. 6658 (November 9, 2013). Final Report explaining the amendments to Rule 1608 published with the Court's Order at 45 Pa.B. 3987 (July 25, 2015). **Final Report explaining the amendments to Rule 1608 published with the Court's Order at - Pa.B. - (-).**