J-S12029-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF: L.J.W., A MINOR

APPEAL OF: L.W., MOTHER

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 1820 EDA 2015

Appeal from the Decree entered May 20, 2015
In the Court of Common Pleas of Philadelphia County, Family Court
at No(s): CP-51-AP-0000181-2015
CP-51-DP-0062670-2009

BEFORE:  MUNDY, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 02, 2016**

L.W. ("Mother") appeals from the decree entered on May 20, 2015, granting the petition filed by the Philadelphia County Department of Human Services ("DHS") to involuntarily terminate her parental rights to her son, L.J.W., born in July of 2006 ("Child"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and the order entered on May 20, 2015, that granted DHS' petition to change Child's permanency goal to adoption under section 6351 of the Juvenile Act, 42 Pa.C.S.A. § 6351.[1]  We affirm.

The trial court accurately summarized the factual background and procedural history of this case as follows:

Mother and Child have a history of involvement with [DHS] that goes back to June 14, 2009.  Mother suffers from several mental

---

[1] On May 20, 2015, the trial court involuntarily terminated the parental rights of P.R., the natural father of Child.  The termination of P.R.'s parental rights is not at issue in this appeal.

---

* Retired Senior Judge assigned to the Superior Court

health issues and [] Child, born [in July of] 200[6], is autistic. On June 14, 2009, DHS received a [g]eneral [p]rotective [s]ervices [report] ("GPS") alleging that Mother went to the emergency room of [] Presbyterian Hospital and requested mental health treatment. Mother stated that she suffered from schizophrenia and was unable to care for [] Child. On June 16, 2009, at a [s]helter [c]are hearing, [] Child was placed in foster care. On June 25, 2009, [] Child was adjudicated dependent. On December 13, 2010, Mother was fully compliant with her [family service plan ("FSP")] and[,] on May 5, 2011, the trial court ordered termination of court supervision.

Two years later, on July 29, 2013, DHS received a new GPS report alleging that [] Child and Mother walked completely naked around the corner from their home. It was also alleged that Mother thought walking naked in the street was fine, that she stop[ped] taking her medication[,] and refused to provide DHS the name of the medication. Mother had no relatives that could care for [] Child and her family did not speak to her because of her mental problems. On the same day, Mother admitted the GPS report allegations and stated that she had not slept for several days. An [o]rder of [p]rotective custody ("OPC") was obtained and Child was placed in a treatment foster care through Bethanna. Mother was hospitalized from July 29 to August 19, 2013. On July 31, 2013, at a [s]helter [c]are hearing, the trial court lifted the OPC and ordered the temporary commitment to stand. On August 9, 2013, the Child was adjudicated dependent and fully committed to DHS. Mother was referred to Behavioral Health Services ("BHS") for monitoring and for a parenting capacity evaluation once discharged from the hospital. Mother was granted weekly supervised visitation.

On August 28, 2013, an initial [FSP] was developed for Mother. Mother's FSP main goal was reunification. Mother's FSP objectives were: to provide adequate and continuous supervision to [] Child, to provide for [] Child's basic needs, to provide adequate safe living conditions, to stabilize her mental health by attendance at a treatment program, to take medication, to attend Child['s] medical appointments and to get a better understanding of his medical diagnosis. On October 30, 2013, at a [p]ermanency [r]eview hearing, Mother was found in moderate compliance with her FSP. Mother was referred to [BHS] for treatment regarding her mental health and ordered to attend a parenting capacity evaluation. Parenting capacity evaluation

- 2 -

recommendation[s] were implemented in [M]other's FSP objectives. On January 29, 2014, at a [p]ermanency [r]eview hearing, Mother was found in moderate compliance with her FSP. The trial court also found that Mother missed three appointments with Warren E. Smith and was re-referred to [the Achieving Reunification Center]. On April 30, 2014 and August 21, 2014, at two different [p]ermanency [r]eview hearings, Mother was found in moderate compliance, respectively. Mother was ordered to provide DHS with a copy of her lease and sign releases. Mother [was] referred for mental health services at three different agencies over the life of this case, but [] never successfully completed any program. As recently as December of 2014, Mother was again hospitalized for jumping into the Delaware [R]iver. . . . On May 20, 2015, the trial court terminated Mother's parental rights. Mother[ ] filed a timely notice of appeal[.[2]]

Trial Court Opinion, 9/22/15, at 1-2 (internal citations omitted; first paragraph break added).

Mother raises three issues for our review:

1. Did the [t]rial [c]ourt err in terminating [Mother's] parental rights under [ s]ection 2511[a]?

2. Did the [t]rial [c]ourt err in finding that termination of parental rights best served [Child's] developmental, physical and emotional needs under []section 2511(b)?

3. Did the [t]rial [c]ourt err in changing [Child's] goal to adoption?

Mother's Brief at vi.

As this Court has stated:

---

[2] Mother filed a concise statement of errors complained of on appeal ("concise statement") contemporaneously with her notice of appeal. **See** Pa.R.A.P. 1925(a)(2)(i). On September 22, 2015, the trial court issued its Rule 1925(a) opinion. All issues raised on appeal were included in Mother's concise statement.

In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty[,] and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue. It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. Our scope of review is limited to determining whether the trial court's order is supported by competent evidence.

*In re Adoption of G.L.L.*, 124 A.3d 344, 346 (Pa. Super. 2015) (internal quotation marks and citations omitted).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *In re Adoption of C.J.P.*, 114 A.3d 1046, 1050 (Pa. Super. 2015) (citation omitted). The trial court terminated Mother's parental rights under section 2511(a)(1), (2), (5), (8), and (b). *See* Trial Court Opinion, 9/22/15, at 1. We will focus on subsection 2511(a)(8). Sections 2511(a)(8), and (b) provide as follows:

**§ 2511. Grounds for involuntary termination**

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

- 4 -

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical[,] and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing[,] and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

This Court has explained that the focus in terminating parental rights under section 2511(a) is on the parent, but, under section 2511(b), the focus is on the child. *In re M.M.*, 106 A.3d 114, 117 (Pa. Super. 2014) (citation omitted). This Court has set forth our inquiry under section 2511(a)(8) as follows:

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), the following factors must be demonstrated: (1) [t]he child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.

*In re P.Z.*, 113 A.3d 840, 851 (Pa. Super. 2015).

In this case, Child was removed from Mother's care on July 29, 2013, 22 months prior to the termination of Mother's parental rights. Thus, the first requirement of section 2511(a)(8) was satisfied. Furthermore, the conditions which led to the removal of Child from Mother's custody continue to exist. Specifically, Child was removed from Mother's custody because of her mental illness and instability. As the trial court noted, Mother was referred to three separate mental health treatment providers during the pendency of this case. Mother failed to complete any of the treatment programs. Mother's continued mental illness and instability was evidenced by her jumping into the Delaware River in December 2014. Thus, the second requirement of section 2511(a)(8) was satisfied.

Finally, terminating Mother's parental rights would best serve Child's needs and welfare. Child has been in his pre-adoptive home for an extended period of time. This pre-adoptive home provides a safe and stable environment with guardians providing for all of Child's needs. Contrast that with the situation Child would face with Mother. Mother is mentally unstable and Child would have neither a safe nor stable environment with Mother. Furthermore, Mother would not be able to meet all of the needs associated with Child's autistic condition. Accordingly, we conclude that DHS proved by clear and convincing evidence that termination would best serve Child's needs and welfare. Accordingly, the third requirement of section 2511(a)(8) was satisfied.

Having determined that the requirements of section 2511(a)(8) were satisfied, we proceed to review whether the requirements of section 2511(b) were satisfied.    Our Supreme Court has "held that the determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child.   The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond."   *In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal quotation marks, alterations, and citations omitted).

Mother asserts that the caseworker testified that Child "does have a bond with his mother for the two hours of the visit, and knows who his mother is."  Mother's Brief at 6 (citation omitted).  Mother states that the caseworker testified that Child enjoyed seeing Mother and regressed during a time he did not see Mother.  *Id.* (citation omitted).  Thus, Mother argues that the trial court failed to properly conduct its bond analysis under section 2511(b).

This Court has observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated.  *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008).  It is also appropriate to consider a child's bond with his or her foster parent.  *See T.S.M.*, 71 A.3d at 268.

The trial court found that, although there was a bond between Mother and Child, it was not a parent/child bond. Rather, the trial court found it was a visitation bond. This finding is consistent with *K.Z.S.* because Child has been in foster care for a significant portion of his life and, therefore, the bond between Child and Mother is attenuated. *See also In re J.L.C.*, 837 A.2d 1247, 1249 (Pa. Super. 2003) (a parent who does not put herself in a position to assume daily parenting responsibilities cannot develop a real bond with her child). Furthermore, the trial court properly considered the bond between Child and his pre-adoptive parents. The trial court found that there was a true parental bond between Child and his pre-adoptive mother. Thus, the trial court found that Child's emotional needs and welfare were best served by terminating Mother's parental rights. For the reasons stated above, we ascertain no abuse of discretion in the trial court's determination. Accordingly, section 2511(b) was also satisfied and the trial court properly terminated Mother's parental rights.

Finally, Mother argues that the trial court erred in changing the permanency goal for Child to adoption. Mother asserts that, from the time that Child came into care, she obtained housing, visited consistently with Child, and was in mental health treatment. Mother, therefore, contends that it is in Child's best interest to be reunified with her.

Our Supreme Court set forth our standard of review for dependency cases as follows.

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

In a change of goal proceeding, the best interests of the child, and not the interests of the parent, must guide the trial court, and the parent's rights are secondary. *In re A.K.*, 936 A.2d 528, 532-533 (Pa. Super. 2007). The burden is on DHS to prove the change in goal would be in the child's best interests. *In the Interest of M.B.*, 674 A.2d 702, 704 (Pa. Super. 1996). Regarding the disposition of a dependent child, section 6351(e), (f), (f.1), and (g) of the Juvenile Act provide the trial court with the criteria for its permanency plan for the subject child. Pursuant to those subsections of the Juvenile Act, the trial court is to determine the disposition that is best suited to the safety, protection, and physical, mental, and moral welfare of the child. *A.K.*, 936 A.2d at 534.

We find instructive *In re N.C.*, 909 A.2d 818 (Pa. Super. 2006). In that case, the trial court granted a goal change to adoption despite the fact that the mother had made substantial progress toward completing her permanency plan. This Court held that the mother's parenting skills and judgment regarding her children's emotional well-being remained problematic. *Id.* at 823.

The same situation is present in the case at bar. Although Mother made progress towards completing the permanency plan, the trial court found that, on at least six occasions spanning a 15-month time period, DHS attempted to provide Mother with services to promote reunification. As noted above, among these efforts was referring Mother to the Achieving Reunification Center on multiple occasions. Despite DHS' best efforts at promoting reunification of Mother and Child, it became evident that reunification was not in Child's best interest. Instead, for the reasons set forth above, the trial court determined that adoption was in Child's best interest. Adoption was the only way for Child to receive the specialized care he requires for his autism and to have a secure, stable, and safe home environment in which all of his needs are met. Thus, we conclude that the trial court did not abuse its discretion by changing Child's permanency goal from reunification to adoption. Accordingly, we affirm the trial court's decree terminating Mother's parental rights to Child pursuant to section 2511(a)(8) and (b) of the Adoption Act, and changing Child's permanency goal to adoption.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/2/2016