J-S93032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: I.D. A/K/A I.M.D., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.D., MOTHER | |
| | No. 2003 EDA 2016 |

Appeal from the Decree May 24, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at Nos.: CP-51-AP-0000698-2015
CP-51-DP-0106442-2007

| | |
|---|---|
| IN THE INTEREST OF: M.D. A/K/A M.E.D., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.D., MOTHER | |
| | No. 2004 EDA 2016 |

Appeal from the Decree May 24, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at Nos.: CP-51-AP-0000699-2015
CP-51-DP-0001963-2012

BEFORE: DUBOW, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED JANUARY 23, 2017**

---

[*] Retired Senior Judge assigned to the Superior Court.

A.D. (Mother) appeals from the trial court's decrees involuntarily terminating her parental rights to her children, I.D., a/k/a I.M.D (I.D.) born in November 2006, and M.D., a/k/a M.E.D. (M.D.), born in June 2008 (the Children). We affirm.

The Philadelphia Department of Human Services (DHS) and Mother's family have a long history that appears to have begun in 2007, prior to the circumstances relevant to this case. We take the following pertinent facts from our independent review of the certified record. In June 2010, DHS received a report that Mother was often under the influence of alcohol and unable to care for her five children, including I.D. and M.D. In October 2012, DHS received a general protective services (GPS) report alleging that Mother and the Children had recently been evicted from their Philadelphia Housing Authority (PHA) home due to non-payment of rent. On October 5, 2016, the Children went to the home of Mother's relative, S.D. On October 16, 2012, Mother entered an inpatient alcohol treatment program.

On October 17, 2012, DHS completed a background check of S.D., and determined that she was not an appropriate caregiver for the Children. DHS obtained an order of protective custody, and placed the Children in a foster home through Catholic Social Services. On November 6, 2012, the court adjudicated the Children dependent after a hearing, committed them to the custody and care of DHS, and referred them for physical and behavioral evaluations.

On January 7, 2013, a family service plan (FSP) meeting was held, which Mother failed to attend. As a result of the meeting, the initial goal for the Children was set to be reunification with Mother. The parental objectives established for Mother were (1) drug and alcohol treatment; (2) in-patient and out-patient mental health treatment; (3) parenting classes; (4) employment; (5) visitation with the Children. (*See* N.T. Hearing, 4/12/16, at 46-47; DHS Exhibit 7). On April 29, 2013, the court ordered Mother to report to the court evaluation unit (CEU) for a drug screen, a dual diagnosis assessment, and monitoring. At a July 29, 2013 permanency hearing, it was reported that Mother was minimally compliant with her permanency plan. The court ordered her to comply with the Achieving Reunification Center (ARC) to obtain housing, and again referred her to CEU for a drug screen and assessment.

At the January 27, 2014 permanency hearing, it was reported that Mother did not comply with her FSP objectives, services, and recommendations. She did not attend parenting, drug and alcohol classes, did not work with ARC to obtain housing, and had only made two out of ten scheduled visits with the Children. At an April 28, 2014 permanency hearing, it was reported that Mother was only minimally compliant with her plan. On May 5, 2014, Mother attended the FSP revision meeting in which M.D.'s goal was changed from reunification to adoption, I.D.'s goal remained reunification, and Mother's objectives remained the same. Mother signed

the FSP. At the January 21, 2015 FSP revision meeting, I.D.'s goal was changed to adoption.

On October 5, 2015, DHS filed petitions to change the Children's permanency goal to adoption, and to involuntarily terminate Mother's parental rights. At the April 12, 2016 hearing on the petitions, DHS social worker Danielle Butler-Todd, Catholic Social Services provider Bashir Johnson, Children's Choice case worker Wayne Hawkins, and Mother, testified.

Ms. Todd testified that the Children came into the care of DHS when they were evicted from a shelter after several instances of Mother's intoxication and violation of shelter rules. (*See* N.T. Hearing, 4/12/16, at 22). She testified that, although she completed some of her FSP objectives, Mother did not achieve all of them. Specifically, she was discharged from outpatient drug and alcohol treatment for noncompliance; she has not attended mental health treatment since December 2015; and has not obtained appropriate housing. (*See id.* at 47-49).

I.D is doing well in fourth grade academically, but struggles with severe behavioral issues. (*See id.* at 46). He is up to date with his medical care and is receiving mobile therapy through Bethanna. (*See id.*). Mother's visitation schedule provides for one supervised visit with I.D. per month, and Mr. Hawkins testified that "whenever there are visits his behavior changes.

He's disruptive in class. He doesn't want to listen. He gets upset. And at one instance, he even ran off." (*Id.* at 60).

Regarding M.D., Ms. Todd testified that since coming into care in October 2012, M.D. has resided in the same kinship home with a family friend. (*See id.* at 73-74). She testified that, although third grader M.D. had some academic problems at the beginning of the school year, she subsequently improved and was doing better at the time of the hearing. (*See id.* at 73). M.D. has "a very loving relationship" with her kinship provider and "[t]hey're both bonded. They . . . have a very strong connection. [M.D.] is very . . . . clingy . . . to her foster mother. They have a very good relationship[.] . . . I think they have a very appropriate parent child relationship." (*Id.* at 74). M.D. looks to her kinship provider for her daily needs. (*See id.*).

Ms. Todd further stated that she did not believe M.D. would experience irreparable harm if Mother's parental rights were terminated because she is "very bonded" with her foster mother, who is a positive role model and parental figure. (*Id.* at 75). She stated that Mother has been given "ample opportunity to reunify" with M.D., but has been resistant to completing her goals for reunification. (*Id.* at 76). Similarly, Mr. Johnson testified that, although M.D. has a bond with Mother, he did not believe she would suffer irreparable harm if Mother's parental rights were terminated because M.D. is

"rooted with her foster mother" with whom she has "a parent child" bond. (*Id.* at 78, 80).

On May 24, 2016 the court issued its decrees finding that DHS met its burden by clear and convincing evidence, and terminated Mother's parental rights to the Children. On June 22, 2016, Mother appealed the court's decrees and filed a concise statements of errors complained of on appeal. *See* Pa.R.A.P. 1925(a)(2)(i).[1] The court filed an opinion on September 6, 2016. *See* Pa.R.A.P. 1925(a)(2)(ii).

Mother raises five questions for this Court's review. In her first four issues, Mother maintains that the trial court erred in terminating her parental rights under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8). (*See* Mother's Brief, at 5). The fifth issue questions "[w]hether the [t]rial [c]ourt erred by terminating the parental rights of [Mother] under 23 Pa.C.S.A. § 2511(b)?" (*Id.*).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court, we conclude that there is no merit to the issues Mother has raised on appeal. The trial court properly disposes of the questions presented. (*See* Trial Court Opinion, 9/06/16, at 2-8 (concluding DHS provided clear and convincing evidence that: (1) pursuant to section 2511(a)(1), Mother demonstrated

---

[1] This Court consolidated the appeals *sua sponte* on July 18, 2016.

settled intent to relinquish parental claim to Children for more than six months prior to the filing of petition, and failed and refused to perform parental duties; (2) under section 2511(a)(2), Mother's refusal to maintain sobriety, commit to treatment and counseling, and obtain housing, resulted in her failing to provide essential parental care, thus depriving Children of safety, security, and subsistence necessary for physical and mental well-being; (3) in satisfaction of section 2511(a)(5), Children have been removed from parental care for more than six months, conditions that led to removal continue to exist, Mother cannot or will not remedy conditions that led to placement in reasonable period of time, services available to Mother to remedy situation are unlikely to remedy conditions that led to placement, and termination of parental rights would best serve needs and welfare of Children; (4) pursuant to section 2511(a)(8), approximately three years have passed since Children's placement and, although Mother initially complied with court ordered drug and alcohol counseling and mental health treatment, she unilaterally discontinued those services and has not obtained housing, so conditions leading to placement still exist and termination of parental rights would best serve needs of Children; and (5) there would be no detrimental effect on Children in severing parental relationship with Mother where there is no bond between them and termination of parental rights would serve best interests of Children under section 2511(b))). Accordingly, we affirm on the basis of the trial court's opinion.

Decrees affirmed.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/23/2017

**IN THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
COURT OF COMMON PLEAS**

IN RE:           :   PHILADELPHIA COUNTY

I.D. & M.D.   2003 EDA 2016 FAMILY COURT DIVISION
2004 EDA 2016 JUVENILE BRANCH

              :   CP-51-DP-0106442-2007

Appeal of A.D.        :   CP-51-AP-0000698-2015

CP-51-DP-0001963-2012
CP-51-AP-0000699-2015

**OPINION**

Olszewski, Walter J.

PROCEDURAL HISTORY

On April 12, 016, A.D. initially appeared before Honorable Walter J. Olszewski for a Change of Goal Hearing. Judge Olszewski, after a hearing on the merits, held the matter under advisement, thereby, reserving decision until next scheduled by the court. On May 24, 2016, the trial court, after a careful review of all of the evidence and applicable law, issued a Permanency Review Order changing the new placement goal to Adoption. On June 22, 2016, A.D., by and through counsel, filed a Notice of Appeal. This appeal now follows.

STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

  1.   The trial court's determinations as to mother's conduct under 23 Pa.C.S.A. § 2511(a)(1) were not supported by and clear and convincing evidence.

  2.   The trial court's determinations as to mother's conduct under 23 Pa.C.S.A. 2511(a)(2) were not supported by clear and convincing evidence.

1

3. The trial court's determinations as to mother's conduct under 23 Pa.C.S.A. § 2511(a)(5) were not supported by clear and convincing evidence.

4. The trial court's determinations as to mother's conduct under 23 Pa.C.A. § 2511(a)(8) were not supported by clear and convincing evidence.

5. The trial court's determinations as to mother's conduct under 23 Pa.C.S.A. § 2511(b) were not supported by clear and convincing evidence.

LEGAL ANALYSIS

First, the trial court will address Appellant's averment of error set forth in paragraph 1 herein above. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. *In re Adoption of R.J.S.*, 901 A.2d 502,510 (Pa. Super. 2006). In the case sub judice, the facts are clear to this point. A.D. was ordered to complete and/or continue drug and alcohol counselling and mental health treatment. Although, A.D. demonstrated some effort to satisfy these court ordered conditions, she failed to continue and/or complete the necessary treatment. *See*, (N.T. 04/12/2016, pgs. 47-49, 55). Moreover, A.D. has not established permanent housing as she is currently in transitional housing. *See*, (N.T. 04/12/2016, pg. 65).

Secondly, the trial court addresses Appellant's averments in paragraph 2. To terminate parental rights pursuant to § 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements:

(1) repeated and continued incapacity, abuse, neglect or refusal;

2

(2)     such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and

(3)     the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).

In the instant matter, the record reveals that A.D. by refusing to maintain sobriety and commit to treatment and counselling, these issue will not be remedied, thus, neglecting the child and failing to be the source of essential parental care. A full review of the record clearly established that all prongs under 23 Pa.C.S.A. § 2511(a)(2) have been met.

"The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted). Further, parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *See In re A.L.D.* 797 A.2d 326, 340 (Pa.Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *See id.*

Moreover, the failure of A.D. to establish and maintain sobriety, mental stability, and safe housing, creates a situation that would deprive I.D. of safety, security and subsistence. *See,* (N.T. 04/12/2016, pgs. 47-49, 55). Unlike subsection (a)(1), subsection (a)(2) does not emphasize a parent's refusal or failure to perform parental duties, but instead emphasizes the child's present and future need for "essential parental care, control or subsistence necessary for his physical or mental well-being." 23 Pa.C.S.A. § 2511(a)(2). *See In re R.I.*, 468 Pa. 287, 361 A.2d 294 (1976). Therefore, the language in subsection (a)(2) should not be read to compel courts to ignore a child's need for a stable home and strong, continuous parental ties, which the policy of restraint in state intervention is intended to protect. *In re William L.*, 477 Pa. 322, 383 A.2d 1228, 1240 (1978). This is particularly so where "disruption of the family has already occurred and

3

there is no reasonable prospect for reuniting it." *Id.* Further, grounds for termination under subsection (a)(2) are not limited to affirmative misconduct; those grounds may include acts of incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super.2002).

Next, the trial court addresses Appellant's averment in paragraph 3. To satisfy the requirements of Section 2511(a)(5), the moving party must produce clear and convincing evidence regarding the following elements:

(1)     the child has been removed from parental care for at least six months;

(2)     the conditions which led to the child's removal or placement continue to exist;

(3)     the parents cannot or will not remedy the conditions which led to removal or placement within a reasonable period time;

(4)     the services reasonably available to the parents are unlikely to remedy the conditions which led to removal or placement within a reasonable period of time; and

(5)     termination of parental rights would best serve the needs and welfare of the child. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 74 (Pa. Super. 2003).

Our law is well established that once a child is removed from the care of the parent, the burden is on the parent to take action to regain parental rights. *See In re Z.P.*, 994 A.2d 1108, 1118-19 (Pa. Super. 2010) (holding that parental obligation is a positive duty which requires affirmative performance). The court will not allow parental inertia to toll the permanency needs of Child in this case. *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) ("[A] parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment."). In the instant case, each element has been sufficiently satisfied. *See*, (N.T. 04/12/2016, pgs. 45-65).

4

Next, the trial court addresses the averments of paragraph 4.

## § 2511. Grounds for involuntary termination

(a) General rule.--The rights of a parent in regard to a child may
be terminated after a petition filed on any of the following grounds:

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child. Pursuant to those subsections of the Juvenile Act, the trial court is to determine the disposition that is best suited to the safety, protection, and physical, mental, and moral welfare of the child. *A.K.*, 936 A.2d at 534. *In re N.C.*, 909 A.2d 818 (Pa. Super. 2006). In that case, the trial court granted a goal change to adoption despite the fact that the mother had made substantial progress toward completing her permanency plan. The court held that the mother's parenting skills and judgment regarding her children's emotional well-being remained problematic. *Id.* at 823. Similarly in the instant case, A.D. has demonstrated initial compliance with the court ordered drug and alcohol counselling and mental health treatment. A.D., however, unilaterally discontinued treatment and counselling.

Finally, the trial court addresses the fifth and final averment of alleged error. [S]ubsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005), the Pennsylvania Superior Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008). Accordingly, the extent of

5

the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 63. *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010). The appellate courts of the Commonwealth have observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008). It is also appropriate to consider a child's bond with his or her foster parent. *See T.S.M.*, 71 A.3d at 268. In the instant case there is no bond between A.D. and I.D. that is reminiscent of a parent-child bond. In fact, the record indicates that I.D. is very uncomfortable, if not discontent, when in the company of A.D. during visits. *See*, (N.T. 04/12/2016, pgs. 49-51, pgs. 59-61). In the instant case, I.D. has been in foster care for a significant time and, therefore, no parental bond exists. The relationship between I.D. and A.D. is attenuated. *See also In re J.L.C.*, 837 A.2d 1247, 1249 (Pa. Super. 2003) (a parent who does not put herself in a position to assume daily parenting responsibilities cannot develop a real bond with her child). Conversely there is a significant bond (parent-child) between I.D. and his caregiver. *See*, (N.T. 04/12/2016, pgs. 49). *In re K.Z.S.* provides guidance in the instant case. In that case, the court observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008). It is also appropriate to consider a child's bond with his or her foster parent. *See T.S.M.*, 71 A.3d at 268. The trial court found that, although there was a bond between Mother and Child, it was not a parent/child bond. Rather, the trial court found it was a visitation bond. This finding is consistent with *K.Z.S.* because Child has been in foster care for a significant portion of his life and, therefore, the bond between Child and Mother is attenuated. *See also In re J.L.C.*, 837 A.2d 1247, 1249 (Pa. Super. 2003) (a parent who does not put herself in a position to assume daily parenting responsibilities cannot develop a real bond with her child). Furthermore, the trial court properly considered the bond between Child and his pre-adoptive parents. The trial court found that there was a true parental bond between Child and his pre-adoptive mother. Thus, the trial court found that Child's emotional needs and welfare were best served by terminating Mother's parental rights. In cases where there is no evidence of any bond between the parent and

6

child, it is reasonable to infer that no bond exists. *Id.* at 763. "The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *Id.* The *In re K.Z.S.* Court emphasized that, in addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, The *In re K.Z.S.* Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child. *Id.* *In re A.S.,* 11 A.3d 473, 483 (Pa. Super. 2010). The trial court, in the instant case, has employed this analysis and found that there would be no detrimental effect on I.D. in severing the parental relationship with A.D. as the record does not reveal a basis for the continuity of such a relationship.

CONCLUSION

The trial court, after receiving sufficient evidence and according said evidence the appropriate weight in light of the law of the Commonwealth of Pennsylvania finds clear and convincing evidence to support its Order of May 24, 2016. The change of the goal to Adoption in the instant case was in the best interest of the child. The trial court's decision is supported by the competent evidence in the record. As in dependency cases, the standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *In re L.M.,* 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Upon a careful review of the record after a trial on the merits, the trial court terminated A.D.'s parental rights pursuant to sections 2511(a)(1), (2), (5), (8) and 2511(b). The Superior Court has pronounced that "[W]e need only agree with [the trial court's] decision as to any one subsection [of 2511(a)] in order to affirm the termination of parental rights." *In re B.L.W.,* 843 A.2d 380, 384 (Pa. Super. 2004) (en banc). In a change of goal proceeding, the best interests of the child, and not the interests of the

7

parent, must guide the trial court, and the parent's rights are secondary. *In re A.K.*, 936 A.2d 528, 532-533 (Pa. Super. 2007). The burden is on DHS to prove the change in goal would be in the child's best interests. *In the Interest of M.B.*, 674 A.2d 702, 704 (Pa. Super. 1996). *In re N.C.*, 909 A.2d 818 (Pa. Super. 2006) is instructive in the instant matter. In that case, the trial court granted a goal change to adoption despite the fact that the mother had made substantial progress toward completing her permanency plan. This Court held that the mother's parenting skills and judgment regarding her children's emotional well-being remained problematic. *Id.* at 823.

The trial court's decision is supported by the weight and sufficiency of the relevant and credible evidence and applicable law.

BY THE COURT:

9-2-2016
Date

HONORABLE WALTER J. OLSZEWSKI, S.J.

8

## PROOF OF SERVICE

I hereby certify that this court is serving, today, the foregoing OPINION, by regular mail, upon the following person(s):

Rebecca Mainor, Esquire
Assistant Defender
Child Advocate Unit
1441 Sansom Street
Philadelphia, PA 19102

Rosa Parks, Esquire (Child Advocate)
Assistant City Solicitor
1515 Arch Street, 16th Floor
Philadelphia, PA 19102

Andre Martino, Esquire
7435 Sprague Street
Philadelphia, PA 19119

DATE: 9-6-16

*Sonté Anthony Reavis, Esq./s*

Sonté Anthony Reavis, Esq.
*Judicial Law Clerk*
Hon. Walter J. Olszewski
Supervising Judge: Family Court
Court of Common Pleas: FJD of PA

9