J-A08028-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1273 WDA 2022 |

Appeal from the Order Entered September 27, 2022
In the Court of Common Pleas of Erie County
Juvenile Division at No(s): CP-25-DP-0000200-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: N.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1274 WDA 2022 |

Appeal from the Order Entered September 27, 2022
In the Court of Common Pleas of Erie County
Juvenile Division at No(s): CP-25-DP-0000201-2021

BEFORE:   STABILE, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.:                **FILED: APRIL 26, 2023**

C.G. ("Mother") appeals from the orders changing the permanency goals

for C.W., born in February 2009, and N.S., born in March 2019 (collectively,

---

[*] Retired Senior Judge assigned to the Superior Court.

"Children"), from concurrent goals of reunification and adoption to adoption.[1] We affirm.

The trial court has thoroughly summarized the factual and procedural history of this appeal, *see* Trial Court Opinion, 11/28/22, at 1-7, and we highlight the following points from the record. In September 2021, the Erie County Office of Child and Youth ("the Agency") received reports that Mother choked her eldest child, N.A., during a domestic dispute and had left C.W. alone with N.S.'s father, a "Megan's Law" offender. Application for Emergency Protective Order, 9/10/21, at 1-2 (unnumbered).[2] The trial court issued an emergency order granting the Agency temporary protective physical and legal custody of Children and N.A. Thereafter, the Agency applied for shelter care orders for Children and N.A., and filed petitions to adjudicate Children dependent. The Agency's dependency petitions recited the history of Children's emergency removal from Mother's care and alleged that Mother had been diagnosed with bipolar disorder, panic attacks, and anxiety, but was not receiving treatment for those conditions. *See e.g.* Dependency Petition, No. 200-2021, 9/14/21, at 3-4. The Agency further noted that Mother had refused

_____

[1] This Court consolidated these appeals *sua sponte*.

[2] The emergency order and the dependency proceedings included the removal of N.A. from Mother's care  The Agency did not seek goal change to adoption as to N.A., who was seventeen at the time, and he is not a party to these appeals. However, the trial court weighed evidence concerning Mother's parenting of N.A. when changing Children's goals to adoption.

to cooperate and had a criminal history, including a pending charge for harassment. *See id*. at 4-5.[3]

Mother stipulated to the reports leading to the emergency removal of Children and the allegations in the dependency petitions.[4] *See* Trial Court Opinion, 11/28/22 at 2. The trial court granted the applications for shelter care, and in September 2021, the court adjudicated Children dependent. *See* Recommendation for Adjudication and Disposition, 9/29/21, at 1-2. The trial court set goals for reunification of the family. *See id*. at 2. Mother's permanency plan required her to: obtain and maintain a safe and stable living environment; actively participate in a parenting program and demonstrate an ability to meet Children's needs; undergo a drug and alcohol evaluation and follow all recommendations, refrain from using drugs and submit to random drug testing; participate in a psychiatric evaluation and follow recommendations; and sign releases for information. *See id*. at 3.[5]

Following a permanency review hearing in December 2021, the trial court found that Mother was not compliant with her permanency plan and had made no progress toward alleviating the circumstances that necessitated Children's placement. *See e.g.* Permanency Review Order, No. 200-2021,

---

[3] The trial court appointed counsel for Mother and a guardian *ad litem* ("GAL") for Children. The GAL supports the goal changes to adoption.

[4] The parties' stipulation included minor amendments to the dependency petitions which do not affect our disposition of this appeal.

[5] Children's fathers participated only minimally in the dependency proceedings, and they have not appealed or participated in these appeals.

12/7/21, at 1. In January 2022, police took Mother into custody for new criminal matters including driving under the influence, possession of a controlled substance, simple assault, criminal mischief, and other offenses. *See* Court Summary Addendum, 12/2/21, at 1. In March 2022, following a permanency hearing, the trial court found that Mother was in prison and not compliant with her permanency plan goals, and had made no progress toward reunification. *See e.g.* Permanency Review Order, No. 200-2021, 3/29/22, at 1. The court added a concurrent goal of adoption.[6] *See e.g. id*. at 2.

Following the March 2022 permanency review, N.A. absconded from his foster home from March to July 2022, and again from July to September 2022. *See* Court Summary Addendum, 9/26/22, at 21. During that time, N.A. reportedly committed an assault and a retail theft. *See id*. Mother was released from prison in July 2022, and when the Agency questioned her about N.A.'s whereabouts and her contacts with him, she gave vague responses and stated that she was not responsible for turning N.A. into the police. *See id*.; *see also* N.T., 9/23/22, at 12. In August 2022, Mother reported that she convinced N.A. to turn himself in to authorities for pending delinquency matters. *See* Court Summary Addendum, 9/26/22, at 22. Police took N.A. into custody. *See id*.

_____

[6] The record indicates that the Agency discussed the process of concurrent planning with Mother and told her that it would pursue adoption rather than reunification if she failed to remedy the reasons for the dependency adjudications. *See* Court Summary Addendum, 3/29/22, at 17; *see also* N.T., 9/23/22, at 32.

In August 2022, the Agency filed petitions to change Children's goals to adoption due to Mother's lack of compliance and her failure to address the circumstances that necessitated their placement. The trial court held a hearing at which an Agency caseworker, Kaitlyn Patton ("Patton"), and Mother testified. Patton, during questioning by the Agency's counsel, agreed that the goal change to adoption was necessary due to Mother's failure to alleviate the circumstances of Children's placement and Children's need for permanency. ***See*** N.T., 9/23/22, at 9-10. Mother testified that she had taken steps to meet her permanency plan in the two months following her release from prison; however, she conceded that she had not done enough for Children and asked the court to give her more time. ***See id***. at 23-29, 31. Additionally, C.W., who stated that she preferred to remain in her current placement. N.S. did not attend the hearing.[7]

On September 27, 2022, the trial court determined that Mother had been minimally compliant with her permanency plan and was making minimal progress toward alleviating the circumstances that necessitated Children's placement. The trial court concluded that the Children's concurrent goals for reunification and adoption were not appropriate or feasible, and ordered goal changes to adoption. Mother appealed and contemporaneously filed a

---

[7] At the time of hearing, C.W. was in a residential facility, and N.S. was in kinship care with his father's side of the family. ***See*** N.T., 9/23/22, at 9. The trial court heard testimony from N.A, who stated he preferred to live with Mother.

statement of errors complained of on appeal pursuant to Pa.R.A.P.

1925(a)(2)(i) and (b).  The trial court filed a responsive Rule 1925(a) opinion.[8]

Mother raises the following issue for our review:

Whether the juvenile court committed an abuse of discretion and/or error of law when it determined that the concurrent permanency goal of reunification was no longer feasible and changed the goal to adoption?

Mother's Brief at 4.

It is well settled that the Juvenile Act, 42 Pa.C.S.A. §§ 6301-6365, governs the placement and custody of a dependent child.  *See In re N.C.*, 909 A.2d 818, 823 (Pa. Super. 2006).  This Court reviews an order regarding a dependent child's placement goal pursuant to an abuse of discretion standard.  *See Interest of H.J.*, 206 A.3d 22, 25 (Pa. Super. 2019).  "In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record."  *In re N.C.*, 909 A.2d at 822-23 (internal citations and quotations omitted).

---

[8] During the pendency of these appeals, the Agency filed petitions to terminate Mother's parental rights to Children.  However, the current record contains no indication of the status of the termination of parental rights proceedings.  We note that a goal change and termination of parental rights are distinct matters that result in separate appealable orders.  An agency may change a goal without seeking a termination of parental rights and may seek the termination of parental rights without changing a goal to adoption.  *See In re Adoption of S.E.G.*, 901 A.2d 1017, 1027-28 (Pa. 2006); *see also In Interest of M.B.*, 674 A.2d 702, 704-05 (Pa. Super. 1996).

Our scope of review is of the broadest possible nature, and this Court will ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. **See In re K.J.**, 27 A.3d 236, 241 (Pa. Super. 2011). This Court affords great deference to the trial court's findings of facts that are supported by the record. **See Interest of H.J.**, 206 A.3d at 25. If the record supports the trial court's findings, this Court will affirm, even if the record could also support an opposite result. **See id**.

When reviewing the trial court's goal change order, we are mindful that the focus of all dependency proceedings, including goal change proceedings, is on the safety, permanency, and well-being of the child and that the best interest of the child must take precedence over all other considerations. **See id**. Pursuant to 42 Pa.C.S.A. § 6351(f), the trial court must consider numerous factors, including the appropriateness and feasibility of the current placement goal for the child at each permanency review hearing. **See** 42 Pa.C.S.A. § 6351(f)(4). If the trial court determines that reunification with a parent is not in a child's best interest, the court may change the child's goal to adoption. **See** 42 Pa.C.S.A. § 6351(f.1)(2). A goal change to adoption does terminate parental rights to a child, but "is a step in that direction." **See Interest of H.J.**, 206 A.3d at 25.

This Court recognizes that "[a] child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting[,]" and that an agency should complete the

placement process within eighteen months. *Id*. (internal citation and quotations marks omitted). Further, an agency must make reasonable efforts to return a child to a biological parent. *See Interest of T.M.W.*, 232 A.3d 937, 947 (Pa. Super. 2020). However, when an agency's reasonable efforts fail, the agency shall redirect its efforts towards placing the child in an adoptive home. *See N.C.*, 909 A.2d at 823. Once the trial court sets a goal to adoption, an agency is no longer required to provide services to a parent. *In re S.B.*, 943 A.2d 973, 978 (Pa. Super. 2008).

In her sole issue in this appeal, Mother claims that the goal changes to adoption lack adequate support in the record. Mother argues that she was participating in services and working toward alleviating the circumstances that led to Children's placement. Mother adds that after her release from prison, she obtained employment, achieved stability, and she sought help from the Agency with employment, housing, drug and alcohol treatment, and was in the process of obtaining a psychological evaluation. Mother further contends that the trial court abused its discretion when weighing her conduct as to N.A., a non-party to this appeal, as a basis for changing Children's goals to adoption.

The trial court, in its Rule 1925(a) opinion, explained its decision to change Children's goals as follows:

> In the instant matter, the [c]ourt considered all the statutorily mandated factors as set forth in 42 Pa.C.S.A. § 6351(f) in determining the Children's permanent placement goal. In viewing all relevant evidence and testimony throughout the life of the dependency case, the [c]ourt found [Mother] had done little if anything, on her treatment plan and was unable to demonstrate

an understanding of the reasons that led to the removal and consequently an ability to alleviate them.

The record reflects that the Children were removed from [Mother's] care on September 10, 2021, due to physical abuse perpetrated against at least one of them in the home, domestic violence, and concerns with [Mother's] mental health, erratic behaviors, and criminal history. During the first review period, [Mother] did not engage in her court-ordered services and tested positive for controlled substances. During the second review period, [Mother] again made no progress with her treatment plan. In fact, she was arrested in three different incidents and was incarcerated from February 2022 until July 27, 2022.

[Mother] was aware upon her release from incarceration that she had lost valuable time working on her treatment plan and that there was a concurrent goal of adoption for the Children, yet she still did not engage in her court-ordered services. She essentially did nothing until the date of her review hearing was approaching and then she made an eleventh-hour effort, at least according to her testimony, with no supporting documentation, to schedule her services. Additionally, despite not having a medical marijuana card[,] the urinalysis tests [Mother] did attend were all positive for marijuana.

Finally, and perhaps more concerning than [Mother's] complete disregard for her treatment plan is her inability to demonstrate she can parent her children when they needed it the most. N.A. absconded from placement in May of 2022 and was not located until September of 2022. The [c]ourt heard credible testimony that [Mother] knew where he was but reported she had "enough on her plate[."] She "didn't need to turn her child into the police." [Mother's] refusal to help the Agency locate her seventeen (17) year-old son who was essentially homeless during the review period, substantially jeopardized his safety and wellbeing and clearly demonstrated her inability to parent . . . Children. Ultimately[,] the [c]ourt found [Mother's] testimony, as reflected in a review of the record, all over the place and lacking in credibility.

Based on [Mother's] lack of ability to remedy the circumstances that led to the Children's dependency after one (1) year, C.W.'s unwavering desire not to be reunified with [Mother], and N.S.'s young age[,] the [c]ourt found that [Mother's] claims of progress and hope for the future were not sufficient reasons for

> the Children's lives to be put on hold in the hopes [Mother] would summon the ability to handle the responsibilities of parenting. Moreover, it would not be in the best interest of the [C]
> hildren to delay their permanency any longer.

Trial Court Opinion, 11/28/22, at 10-11.

Following our review, we conclude that the record supports the trial court's findings of fact and that its legal conclusions are sound. Following Children's removal and adjudications of dependency, Mother's permanency plan required, *inter alia*, her (1) maintenance of a safe and stable living environment; (2) active participation in a parenting program and a demonstration of her ability to meet Children's needs; (3) submission to drug tests to ensure she refrained from substance abuse; and (4) participation in a psychiatric evaluation.

Mother does not dispute the ample evidence that she was not compliant with her permanency plan for the three months from the adjudications of dependency until her imprisonment in January 2022. The trial court further heard testimony that following her release from prison in July 2022, Mother became more receptive to contact with the Agency and was consistent with visitations. **See** N.T., 9/23/22, at 5, 15. However, as to Mother's living arrangements, Mother was not at home for either a scheduled and an unannounced home visit, and Patton, the Agency caseworker, was not able to inspect Mother's home after Mother's release from prison. **See id**. at 5-6.

Regarding parenting, Patton attempted to refer Mother to a parenting program following Mother's release from prison, but one program refused to admit her due to her prior unsuccessful participation; Patton made a second

- 10 -

referral, but that program had not contacted Mother before the hearing. *See id*. at 6-7. Patton also testified about N.A.'s troubled history during this case and his flight from foster care; Mother, Patton noted, provided little assistance after N.A. ran away despite indications that Mother had contact with N.A., and Patton recalled that Mother stated, "[S]he had enough on her plate to turn her own child over into the police[,]" and did not believe it was "her responsibility to turn in [N.A.]" *See id*. at 12.

Patton testified that Mother reported attending an anger management program and drug and alcohol programs; Mother, however, did not provide any documentation of her attendance and only provided Patton with a certificate of her completion of a prison drug and alcohol program the day before the hearing.[9] *See id*. at 7. As to Mother's requirement that she address her drug and alcohol issues, Mother has not passed a drug test since being released from prison.[10]

Concerning Mother's mental health requirements, Patton testified that Mother did not appear for a scheduled intake appointment, despite Patton's warnings that Mother needed to act immediately after her release from prison

---

[9] We note that Patton testified that Mother did not give her documentation of her employment; however, Patton also noted that she did not ask for that documentation. *See* N.T., 9/23/22, at 18.

[10] Mother did not consistently appear for drug tests, and when she did, she tested positive for marijuana use despite only having an expired medical marijuana card. She also tested positive once for Suboxone, for which, she testified, she had a prescription; however, she did not provide documentation of the prescription and only showed Patton the prescription bottle and label.

because programs and resources often have waitlists. *See id*. at 8-9. Mother then attended an intake appointment ten days before the hearing but could only schedule a psychiatric evaluation to take place after the hearing. *See id*.

The foregoing record demonstrates that Mother failed to complete her permanency plan goals for more than one year. The trial court appropriately concluded that Mother has failed to demonstrate an ability to safely parent Children and lacked an appropriate insight into her parenting skills as evidenced by her responses to N.A.'s flight from foster care. The trial court's determination that reunification, even as a concurrent goal, was not appropriate or feasible has support in the record and was reasonable. *See* 42 Pa.C.S.A. § 6351(f)(4), (f.1)(2). To the extent Mother claims that she made recent progress, we decline her invitation to reweigh the evidence or disturb the trial court's conclusion that neither Mother's minimal compliance immediately before the goal changes, nor her hopes that she could "summon the ability to handle the responsibilities of parenting" in the future, outweigh Children's needs for permanency. Trial Court Opinion, 11/28/22, at 10-11; *accord Interest of H.J.*, 206 A.3d at 25, 27.

Thus, we conclude that Mother's arguments fail to establish an abuse of discretion in the trial court's decision to change Children's goals to adoption, and we affirm the goal change orders. *See id*.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  4/26/2023